# EXHIBIT A



# SECOND AMENDED AND RESTATED CREDIT AGREEMENT

This Second Amended and Restated Credit Agreement (the "Agreement"), dated as of December 29, 2006, is between **City National Bank** ("CNB") and **A. F. Evans Company, Inc.** ("AFE"), **A. F. Evans Development, Inc., Evans Property Management, Inc., and Evans Senior Communities, Inc.,** all California corporations (Collectively, **"Borrower"**). This Agreement amends and restates in its entirety the Amended and Restated Credit Agreement dated as of May 9, 2005, between CNB and Borrower A. F. Evans Company, Inc. ("Original Agreement").

**1. DEFINITIONS.** As used in this Agreement, these terms have the following meanings:

1.1 **"Account"** or **"Accounts"** mean any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance.

1.2 **"Account Debtor"** means the Person obligated on an Account.

1.3 **"Affiliate"** means any Person directly or indirectly controlling, controlled by, or under common control with, Borrower, and includes any employee stock ownership plan of Borrower or an Affiliate. "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of that Person, whether through the ownership of voting securities, by contract or otherwise.

1.4 **"Borrowing Base Calculation"** shall be in the form agreed to by CNB, and shall include a calculation of Fees Receivable and Project Advances.

1.5 **"Business Day"** means a day that CNB's Head Office is open and conducts a substantial portion of its business.

1.6 **"Code"** means the California Uniform Commercial Code, except where the Uniform Commercial Code of another state governs the perfection of a security interest in Collateral located in that state.

1.7 **"Collateral"** means the property, if any, securing the Obligations.

1.8 **"Covenant Compliance Certificate"** shall be in the form agreed to by CNB.

1.9 **"Current Assets"** will be determined on a consolidated basis for Borrower and shall include cash and cash equivalents, Fees Receivable, and amounts Borrower has advanced with respect to Properties, excluding, however, loans to stockholders, management or employees, amounts due from Subsidiaries or Affiliates, deferred costs, and other intangible assets.

1.10 **"Current Liabilities"** will be determined on a consolidated basis for Borrower in accordance with GAAP and will include without limitation (a) amounts due for Revolving Credit Loans, (b) amounts due for Project Advance Loans, (c) all payments on Subordinated Debt required to be made

137380.4;4
02/02/07 10:19 AM

1

Case: 09-41727   Doc# 22   Filed: 03/09/09   Entered: 03/09/09 18:52:06   Page 2 of 58

within one (1) year after the date on which the determination is made; and (d) all indebtedness payable to stockholders, Affiliates, Subsidiaries or officers regardless of maturity, unless such indebtedness has been subordinated, on terms satisfactory to CNB, to the Obligations.

1.11   "**Debt**" means, at any date, the aggregate amount of, without duplication, (a) all obligations of Borrower or any Subsidiary for borrowed money; (b) all obligations of Borrower or any Subsidiary evidenced by bonds, debentures, notes or other similar instruments; (c) all obligations of Borrower or any Subsidiary to pay the deferred purchase price of property or services; (d) all capitalized lease obligations of Borrower or any Subsidiary; (e) all obligations or liabilities of others secured by a lien on any asset of Borrower or any Subsidiary, whether or not such obligation or liability is assumed; (f) all obligations guaranteed by Borrower or any Subsidiary; (g) all obligations of Borrower or any Subsidiary, direct or indirect, for letters of credit; and (h) any other obligations or liabilities which are required by generally accepted accounting principles to be shown as debt on the balance sheet of Borrower or any Subsidiary.

1.12   "**Demand Deposit Account**" means Borrower's demand deposit account no. 444-010401 maintained with CNB.

1.13   "**Eurocurrency Reserve Requirement**" means the aggregate (without duplication) of the rates (expressed as a decimal) of reserves (including, without limitation, any basic, marginal, supplemental, or emergency reserves) that are required to be maintained by banks during the Interest Period under any regulations of the Board of Governors of the Federal Reserve System, or any other governmental authority having jurisdiction with respect thereto, applicable to funding based on so-called "Eurocurrency Liabilities", including Regulation D (12 CFR 224).

1.14   "**Facility Fee**" is $225,000.00.

1.15   "**Fees Receivable**" shall be fees for bookkeeping, management and development services rendered which have been earned by performance but payment of which is contractually deferred.

1.16   "**GAAP**" means generally accepted accounting principles and practices, consistently applied.

1.17   "**Guarantor**" is Arthur F. Evans.

1.18   "**Interest Period**" means the period commencing on the date the LIBOR Loan is made (including the date a Prime Loan is converted to a LIBOR Loan, or a LIBOR Loan is renewed as a LIBOR Loan, which, in the latter case, will be the last day of the expiring Interest Period) and ending on the last day of the month occurring prior to or on the date which is one (1), two (2), three (3), six (6), nine (9) or twelve (12) months thereafter, as selected by the Borrower; provided, however, no Interest Period may extend beyond the Termination Date.

1.19   "**Inventory**" means goods held for sale or lease in the ordinary course of business, work in process and any and all raw materials used in connection with the foregoing.

1.20   "**Letters of Credit**" shall mean Standby Letters of Credit.

1.21   "**LIBOR Base Rate**" means the British Banker's Association definition of the London InterBank Offered Rates as made available by Bloomberg LP, or such other information service available to CNB, for the applicable monthly period upon which the Interest Period is based for the LIBOR Loan selected by Borrower and as quoted by CNB on the Business Day Borrower requests a LIBOR Loan or on the last Business Day of an expiring Interest Period.

137380:4:4
02/02/07 10:19 AM

2

Case: 09-41727   Doc# 22   Filed: 03/09/09   Entered: 03/09/09 18:52:06   Page 3 of 58

1.22    **"LIBOR Interest Rate"** means the rate per year (rounded upward to the next one-sixteenth (1/16th) of one percent (0.0625%), if necessary) determined by CNB to be the quotient of (a) the LIBOR Base Rate divided by (b) one minus the Eurocurrency Reserve Requirement for the Interest Period; which is expressed by the following formula:

$$\frac{\text{LIBOR Base Rate}}{1 - \text{Eurocurrency Reserve Requirement}}$$

1.23    **"LIBOR Loan"** means any Loan tied to the LIBOR Interest Rate.

1.24    **"Loan"** or **"Loans"** means one or more of the Loans extended by CNB to Borrower under Section 2.

1.25    **"Loan Documents"** means, individually and collectively, this Agreement, any Note, guaranty, security or pledge agreement, financing statement and all other contracts, instruments, addenda and documents executed in connection with or related to the extension(s) of credit, and any Collateral therefor, which is the subject of this Agreement.

1.26    **"Net Income"** means net income computed in accordance with GAAP, and shall be determined for each fiscal quarter and the preceding three fiscal quarters.

1.27    **"Notes"** means the Notes referenced in Section 2.

1.28    **"Obligations"** means all present and future liabilities and obligations of Borrower to CNB hereunder and all other liabilities and obligations of Borrower to CNB of every kind, now existing or hereafter owing, matured or unmatured, direct or indirect, absolute or contingent, joint or several, including any extensions and renewals thereof and substitutions therefor.

1.29    **"Partnerships"** shall mean any general or limited partnership as to which Borrower or any Subsidiary is the sole general partner, or any limited liability company as to which Borrower or any Subsidiary is the sole managing member or manager.

1.30    **"Person"** means any individual or entity.

1.31    **"Potential Event of Default"** means any condition that with the giving of notice or passage of time or both would, unless cured or waived, become an Event of Default.

1.32    **"Prime Rate"** means the rate most recently announced by CNB at its principal office in Beverly Hills, California as its "Prime Rate." Any change in the interest rate resulting from a change in the Prime Rate will be effective on the day on which each change in the Prime Rate is announced by CNB.

1.33    **"Project"** means a Property in the course of development and shall be identified by name and physical address.

1.34    **"Project Advance Borrowing Base"** shall mean Fifty Percent (50%) of the sum of all Project Advances made by Borrower with respect to all Properties.

1.35    **"Project Advance Commitment"** shall be Twelve Million Dollars ($12,000,000.00) through December 31, 2007, Ten Million Two Hundred and Fifty Thousand Dollars ($10,250,000.00) through July 31, 2008, and Nine Million Five Hundred Thousand Dollars ($9,500,000.00) thereafter.

137380.4;4
02/02/07 10:19 AM

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 4 of 58

1.36    **"Project Advance Limitation"** shall be equal to the lesser of (i) $1,200,000 or (ii) the total Project Advances expended by the Borrower on a Project, net of funds received from sources other than the Borrower or CNB.

1.37    **"Project Advances"** means funds advanced by Borrower with respect to a Project to pay for predevelopment expenses relating to the Project.

1.38    **"Property"** shall mean a parcel of real property to be acquired, developed or remodeled by Borrower, a Subsidiary or a Partnership.

1.39    **"Revolving Credit Borrowing Base"** shall mean Fifty Percent (50%) of Fees Receivable.

1.40    **"Revolving Credit Commitment"** shall be Ten Million Five Hundred Thousand Dollars ($10,500,000) through December 31, 2007, Eight Million Seven Hundred Fifty Thousand Dollars ($8,750,000.00) through July 31, 2008, and Eight Million Dollars ($8,000,000.00) thereafter..

1.41    **"Subordinated Debt"** means Debt of Borrower or any Subsidiary, the repayment of which is subordinated to the Obligations on terms satisfactory to CNB.

1.42    **"Subsidiary"** means any corporation, the majority of whose voting shares are at any time owned, directly or indirectly by Borrower and/or by one or more Subsidiaries.

1.43    **"Tangible Net Worth"** means the total of all assets appearing on a balance sheet prepared in accordance with GAAP for Borrower and the Subsidiaries on a consolidated basis, minus (a) all intangible assets, including, without limitation, unamortized debt discount, Affiliate, employee and officer receivables or advances, goodwill, research and development costs, patents, trademarks, the excess of purchase price over underlying values of acquired companies, any covenants not to compete, deferred charges, copyrights, franchises and appraisal surplus; minus (b) all obligations which are required by GAAP to be reflected as a liability on the consolidated balance sheet of Borrower and the Subsidiaries; minus (c) the amount, if any, at which shares of stock of a non-wholly owned Subsidiary appear on the asset side of Borrower's consolidated balance sheet, as determined in accordance with GAAP; minus (d) minority interests; and minus (e) deferred income and reserves not otherwise reflected as a liability on the consolidated balance sheet of Borrower and the Subsidiaries.

1.44    **"Termination Date"** means July 31, 2008. Notwithstanding the foregoing, CNB may, at its option, terminate this Agreement pursuant to Section 8.3; the date of any such termination will become the Termination Date as that term is used in this Agreement.

1.45    **"Total Senior Liabilities"** means, as of any date of determination, the amount of all obligations that should be reflected as a liability on a consolidated balance sheet of Borrower and the Subsidiaries prepared in accordance with GAAP, less Subordinated Debt.

## 2. LOANS.

2.1    **Revolving Credit Loan.** Subject to the terms of this Agreement, CNB agrees to make loans ("Revolving Credit Loans") to Borrower, from the date of this Agreement up to but not including the Termination Date, at such times as Borrower may request, up to the lesser of (i) the amount of Revolving Credit Commitment, or (ii) the Revolving Credit Borrowing Base, both less the amount of outstanding Letters of Credit and unpaid drafts under drawn Letters of Credit. The Revolving Credit Loans may be repaid and reborrowed at any time up to the Termination Date. Provided, however, no

137380 4:4
02/02/07 10:19 AM

4

Revolving Credit Loans shall be made for use in market rate "for sale" new construction Projects or condo conversion Projects, unless consented to by CNB.

**2.1.1   Interest.**  The Revolving Credit Loans will bear interest from disbursement until due (whether at stated maturity, by acceleration on otherwise) at a rate equal to, at Borrower's option, either (a) for a LIBOR Revolving Credit Loan, the LIBOR Interest Rate plus two and six tenth percent (2.60%) per year, or (b) for a Prime Revolving Credit Loan, the fluctuating Prime Rate plus one half percent per year. Interest on the Revolving Credit Loans and other charges incurred under this Agreement will accrue daily and be payable (a) monthly in arrears, on the last day of each month, commencing on the first such date following disbursement; (b) if a LIBOR Revolving Credit Loan, upon any prepayment of any LIBOR Revolving Credit Loan (to the extent accrued on the amount prepaid); and (c) at the Termination Date. A Revolving Credit Loan tied to the LIBOR Interest Rate is called a "LIBOR Revolving Credit Loan," and a Revolving Credit Loan tied to the Prime Rate is called a "Prime Revolving Credit Loan." A Revolving Credit Loan will be a Prime Revolving Credit Loan any time it is not a LIBOR Revolving Credit Loan.

**2.1.2   Payment for Amounts Exceeding Fifty Percent (50%) of Fees Receivable.**  Borrower will, immediately upon demand, repay outstanding Revolving Credit Loans by the amount by which the unpaid principal amount of Revolving Credit Loans plus Letters of Credit outstanding exceeds Fifty Percent (50%) of Fees Receivable.  The portion of Revolving Credit Loans plus Letters of Credit outstanding exceeding Fifty Percent (50%) of Fees Receivable will bear additional interest of three percent (3.0%) per year over the rate set forth in Section 2.1.1.

**2.1.3   Procedure for Revolving Credit Loans.**  Each Revolving Credit Loan may be made by CNB at the oral or written request of anyone who is authorized in writing by Borrower to request Revolving Credit Loans until written notice of the revocation of such authority is received by CNB.

**2.1.4   Existing Loans.**  The following existing Loans (each a "Loan") made under the Original Agreement will be governed by the terms of this Agreement and will be deemed Revolving Credit Loans for all purposes under this Agreement:

| Note Number | Date of Note | Original Principal Amount |
|---|---|---|
| 657273/32 | 03/03/05 | $500,000.00 |
| 657273/35 | 05/27/05 | $500,000.00 |
| 657273/36 | 05/27/05 | $700,000.00 |
| 657273/37 | 05/27/05 | $150,000.00 |
| 657273/41 | 06/13/05 | $100,000.00 |
| 657273/43 | 06/13/05 | $300,000.00 |
| 657273/44 | 06/13/05 | $250,000.00 |
| 657273/46 | 06/13/05 | $250,000.00 |
| 657273/47 | 06/13/05 | $180,000.00 |
| 657273/48 | 06/13/05 | $150,000.00 |
| 657273/52 | 07/19/05 | $290,000.00 |
| 657273/54 | 08/26/05 | $170,000.00 |
| 657273/55 | 08/26/05 | $100,000.00 |
| 657273/57 | 08/26/05 | $75,000.00 |
| 657273/58 | 08/26/05 | $150,000.00 |
| 657273/60 | 10/18/05 | $510,000.00 |
| 657273/61 | 10/18/05 | $165,000.00 |

137380.4:4
02/02/07 10:19 AM

Case: 09-41727   Doc# 22   Filed: 03/09/09   Entered: 03/09/09 18:52:06   Page 6 of 58

| | | |
|---|---|---|
| 657273/62 | 11/07/05 | $100,000.00 |
| 657273/63 | 11/07/05 | $320,000.00 |
| 657273/64 | 11/07/05 | $150,000.00 |
| 657273/68 | 12/27/05 | $175,000.00 |
| 657273/73 | 12/27/05 | $300,000.00 |
| 657273/74 | 01/27/06 | $425,000.00 |
| 657273/77 | 01/27/06 | $500,000.00 |
| 657273/78 | 01/27/06 | $100,000.00 |
| 657273/79 | 03/24/06 | $150,000.00 |
| 657273/80 | 03/24/06 | $180,000.00 |
| 657273/83 | 04/13/06 | $35,000.00 |
| 657273/87 | 04/13/06 | $250,000.00 |
| 657273/88 | 04/13/06 | $300,000.00 |
| 657273/89 | 12/28/06 | $200,000.00 |
| 657273/109 | 12/28/06 | $400,000.00 |
| 657273/110 | 12/28/06 | $400,000.00 |
| 657273/114 | 12/28/06 | $400,000.00 |
| 657273/115 | | $400,000.00 |

**2.2    Revolving Credit Letter of Credit Facility.**  CNB shall, at the request of Borrower, issue Letters of Credit ("Revolving Credit Letters of Credit"), from time to time, to, but not including, the Termination Date, up to the lesser of (i) the amount of Revolving Credit Commitment, or (ii) the Revolving Credit Borrowing Base, both less the amount of outstanding Revolving Credit Loans and unpaid drafts under drawn Letters of Credit.

   **2.2.1    Issuance of Letters of Credit.**

        (a)    **Issuance of Letters of Credit.**  Letters of Credit will be issued in accordance with an Irrevocable Standby Letter of Credit Application and Letter of Credit Agreement submitted by Borrower and incorporated herein by this reference, subject to the terms of this Agreement in the event of any conflict herewith.  Letters of Credit will be issued on the normal documentation used by CNB from time to time in accord with the International Standby Practices 1998.  Unless CNB otherwise agrees in writing, no Letter of Credit may expire more than twelve (12) months after the Termination Date.  The fee for issuance of Letters of Credit shall be the greater of $1500.00 or one percent (1%) per annum and, otherwise, standard CNB fees and charges will apply to the issuance of Letters of Credit.

        (b)    For Borrower's convenience and pursuant to its request, Borrower may submit the Irrevocable Letter of Credit Application by telephone facsimile ("FAX") which will include FAX signatures.  CNB is authorized to accept faxed documents without any need, requirement or responsibility to verify in any way the genuineness or authenticity of the faxed documents or signatures.  Borrower will deliver to CNB an originally executed Irrevocable Standby Letter of Credit Application and Agreement within ten (10) days of each faxing.  CNB's failure to receive an original set of documents shall not be deemed or construed in any way to affect the propriety of issuing the Letters of Credit or Borrower's liability to reimburse CNB for the amount of any drawings under the issued Letter of Credit.

   **2.2.2    Procedure for Revolving Credit Letters of Credit.**  Borrower shall give CNB at least five (5) Business Days advanced written notice of its request for a Revolving Credit Letter of Credit ("Notice of Request"), which Notice of Request shall specify (a) the amount of the Revolving Credit

137380.4:4
02/02/07 10:19 AM

6

Letter of Credit; (b) the proposed issuance date; (c) the proposed termination date; (d) the proposed drawing language, and (e) the purpose of the Revolving Credit Letter of Credit including a detailed description of the Property involved.

**2.2.3   Reimbursement for Funding Letter of Credit.**   Any payment of a draft made after a drawing under a Letter of Credit, including those identified in Section 2.2.4, below, will be deemed to be an irrevocable request for a Revolving Credit Loan under this Agreement. Borrower's obligation to reimburse CNB may also be satisfied by charging Borrower's Demand Deposit Account if requested by Borrower. CNB's obligation under this Subsection to make a Revolving Credit Loan will exist irrespective of the existence of any Potential Event of Default or Event of Default.

**2.2.4   Existing Letters of Credit.**   The following existing Letters of Credit (each a "Letter of Credit") issued under the Original Agreement will be deemed Revolving Credit Letters of Credit and governed by the terms of this Agreement:

| L/C Number | Date of L/C | Amount of L/C |
|---|---|---|
| 050413.OD.3377 | 04/14/05 | $700,000.00 |
| 060828.OD.4091 | 08/14/06 | $540,000.00 |

**2.3   Project Advance Loan.**   Subject to the terms of this Agreement, CNB agrees to make loans ("Project Advance Loans") to Borrower, from the date of this Agreement up to but not including the Termination Date, at such times as Borrower may request, up to the lesser of (a) the amount of the Project Advance Commitment, (b) the Project Advance Borrowing Base, or (c) as to each Project, the Project Advance Limitation. The Project Advance Loans may be repaid and reborrowed at any time up to the Termination Date. Each Project Advance Loan shall be evidenced by a promissory note ("Note") in a form satisfactory to CNB. Each Note shall mature no later than the first to occur of (i) twenty four (24) months after disbursement, unless otherwise agreed by CNB, or (ii) upon funding of a construction loan secured by the Property, on which date any outstanding balance of principal and interest on the Project Advance Loans shall be due and payable. (Provided, however, the source of repayment for such loan need not be the construction loan.) Provided, however, no Project Advance Loans shall be made for use in market rate "for sale" new construction Projects or condo conversion Projects unless consented to by CNB.

**2.3.1   Interest.**   The Project Advance Loans will bear interest from disbursement until due (whether at stated maturity, by acceleration on otherwise) at a rate equal to, at Borrower's option, either (a) for a LIBOR Project Advance Loan, the LIBOR Interest Rate plus two and six tenths percent (2.60%) per year, or (b) for a Prime Project Advance Loan, the fluctuating Prime Rate per year. Interest on the Project Advance Loans and other charges incurred under this Agreement will accrue daily and be payable (a) monthly in arrears, on the last day of each month, commencing on the first such date following disbursement; (b) if a LIBOR Project Advance Loan, upon any prepayment of any LIBOR Project Advance Loan (to the extent accrued on the amount prepaid); and (c) at the Termination Date. A Project Advance Loan tied to the LIBOR Interest Rate is called a "LIBOR Project Advance Loan," and a Project Advance Loan tied to the Prime Rate is called a "Prime Project Advance Loan." A Project Advance Loan will be a Prime Project Advance Loan any time it is not a LIBOR Project Advance Loan.

**2.3.2   Procedure for Project Advance Loans.**   Borrower shall give CNB at least five (5) Business Days advanced written notice of its request for a Project Advance Loan ("Notice of Borrowing"), which Notice of Borrowing shall specify (a) the Principal amount of the Project Advance Loan; (b) the proposed borrowing date; (c) the proposed repayment date; and (d) the purpose of the Project Advance Loan, including a detailed description of the Property involved.

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 8 of 58

**2.3.3 Payment for Amounts Exceeding Fifty Percent (50%) of Project Advances.** Borrower will, immediately upon demand, repay outstanding Project Advance Loans by the amount by which the unpaid principal amount of Project Advance Loans exceeds Fifty Percent (50%) of Project Advances. The portion of Project Advance Loans exceeding Fifty Percent (50%) of Project Advances will bear additional interest of three percent (3.0%) per year over the rate set forth in Section 2.3.1.

**2.3.4 Existing Loans.** The following existing Loans (each a "Loan") made under the Original Agreement will be governed by the terms of this Agreement and the principal balances thereof, as they exist from time to time, will be deemed Project Advance Loans for the purposes of determining the amount of Project Advance Loans available under Section 2.3:

| Note Number | Date of Note | Original Principal Amount |
|---|---|---|
| 657273/49 | 06/13/05 | $1,500,000.00 |
| 657273/50 | 06/13/05 | $1,630,000.00 |
| 657273/75 | 12/27/05 | $800,000.00 |
| 657273/76 | 12/27/05 | $500,000.00 |
| 657273/34 | 03/14/05 | $400,000.00 |
| 657273/39 | 05/27/05 | $250,000.00 |
| 657273/48 | 06/13/05 | $150,000.00 |
| 657273/53 | 07/19/05 | $100,000.00 |
| 657273/65 | 11/07/05 | $300,000.00 |
| 657273/66 | 11/07/05 | $450,000.00 |
| 657273/70 | 12/27/05 | $100,000.00 |
| 657273/71 | 12/27/05 | $100,000.00 |
| 657273/81 | 03/24/06 | $200,000.00 |
| 657273/82 | 03/24/06 | $300,000.00 |
| 657273/84 | 04/13/06 | $200,000.00 |
| 657273/85 | 04/13/06 | $150,000.00 |
| 657273/86 | 04/13/06 | $500,000.00 |
| 657273/90 | 06/12/06 | $300,000.00 |
| 657273/91 | 06/12/06 | $200,000.00 |
| 657273/93 | 09/12/06 | $150,000.00 |
| 657273/94 | 09/12/06 | $100,000.00 |
| 657273/95 | 09/12/06 | $150,000.00 |
| 657273/96 | 12/19/06 | $250,000.00 |
| 657273/97 | 12/19/06 | $100,000.00 |
| 657273/98 | 12/19/06 | $150,000.00 |
| 657273/99 | 12/19/06 | $250,000.00 |
| 657273/100 | 12/19/06 | $300,000.00 |
| 657273/101 | 12/19/06 | $100,000.00 |
| 657273/102 | 12/19/06 | $200,000.00 |
| 657273/103 | 12/28/06 | $150,000.00 |
| 657273/104 | 12/28/06 | $50,000.00 |
| 657273/105 | 12/28/06 | $100,000.00 |
| 657273/106 | 12/28/06 | $600,000.00 |
| 657273/107 | 12/28/06 | $200,000.00 |
| 657273/108 | 12/28/06 | $200,000.00 |
| 657273/111 | 12/28/06 | $50,000.00 |
| 657273/112 | 12/28/06 | $50,000.00 |

137380.4:4
02/02/07 10:19 AM

8

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 9 of 58

| 657273/113 | 12/28/06 | $100,000.00 |
| 657273/116 | 12/28/06 | $600,000.00 |
| 657273/117 | 12/28/06 | $700,000.00 |

Such Existing Loans shall remain payable in accord with their original terms, except that, with respect to Notes numbered 657273/75 and 657273/76, principal shall be repayable after the date of this Agreement, with each payment of interest commencing with the first such payment, in an amount equal to one sixtieth (1/60) of the amount due on the date of this Agreement.

## 2.4    LIBOR Loan Terms and Conditions

2.4.1    **Procedure for LIBOR Loans.** Borrower may request that a Loan be a LIBOR Loan (including conversion of a Prime Loan to a LIBOR Loan, or continuation of a LIBOR Loan as a LIBOR Loan upon the expiration of the Interest Period). Borrower's request will be irrevocable, will be made to CNB using the "Notice of Borrowing" form attached hereto as Exhibit "A", no earlier than two (2) Business Days before and no later than 1:00 p.m. Pacific Time on the day the LIBOR Loan is to be made. If Borrower fails to select a LIBOR Loan in accordance herewith, the Loan will be a Prime Loan, and any outstanding LIBOR Loan will be deemed a Prime Loan upon expiration of the Interest Period.

2.4.2    **Availability of LIBOR Loans.** Notwithstanding anything herein to the contrary, each LIBOR Loan must be in the minimum amount of $500,000.00 and increments of $100,000.00. Borrower may not have more than five (5) LIBOR Loans outstanding at any one time under this Agreement. Borrower may have Prime Loans and LIBOR Loans outstanding simultaneously.

2.4.3    **Prepayment of Principal.** Borrower may not make a partial principal prepayment on a LIBOR Loan. Borrower may prepay the full outstanding principal balance on a LIBOR Loan prior to the end of the Interest Period, provided, however, that such prepayment is accompanied by a fee ("LIBOR Prepayment Fee") equal to the amount, if any, by which (a) the additional interest which would have been earned by CNB had the LIBOR Loan not been prepaid exceeds (b) the interest which would have been recoverable by CNB by placing the amount of the LIBOR Loan on deposit in the LIBOR market for a period starting on the date on which it was prepaid and ending on the last day of the applicable Interest Period. CNB's calculation of the LIBOR Prepayment Fee will be deemed conclusive, absent manifest error.

2.4.4    **Suspension of LIBOR Loans.** If CNB, on any Business Day, is unable to determine the LIBOR Base Rate applicable for a new, continued, or converted LIBOR Loan for any reason, or any law, regulation, or governmental order, rule or determination, makes it unlawful for CNB to make a LIBOR Loan, Borrower's right to select LIBOR Loans will be suspended until CNB is again able to determine the LIBOR Base Rate or make LIBOR Loans, as the case may be. During such suspension, new Loans, outstanding Prime Loans, and LIBOR Loans whose Interest Periods terminate may only be Prime Loans.

## 2.5    Optional Prepayments.
Borrower may prepay any Loans provided that on each prepayment, Borrower will pay the accrued interest on the prepaid principal, to the date of such prepayment. All prepayments will be applied to principal installments in the inverse order of their maturities.

## 2.6    Loans and Payments.
All payments will be in United States Dollars and in immediately available funds. Interest will be computed on the basis of a 360 day year, actual days elapsed. All payments of principal, interest, fees and other charges on the Loans will be billed to Borrower. CNB is authorized to note the date, amount and interest rate of each Loan and each payment of principal and

137380.4;4
02/02/07 10:19 AM

9

interest on CNB's books and records, which notations will constitute presumptive evidence of the accuracy of the information noted. Any Loan will be conclusively presumed to have been made to or for the benefit of Borrower when CNB, in its sole discretion, believes that the request therefor has been made by authorized persons (whether in fact that is the case), or when the Loan is deposited to the credit of Borrower's account with CNB, regardless of whether any Person other than Borrower may have authority to draw against such account.

2.7    **Default Interest Rate.** From and after written notice by CNB to Borrower of the occurrence of an Event of Default (and without constituting a waiver of such Event of Default), the Loans and any other amounts due CNB hereunder (and interest to the extent permitted by law) will bear additional interest at a fluctuating rate equal to five percent (5.0%) per year higher than the interest rate as determined in Sections 2.1.2, until the Event of Default has been cured; provided, however, for purposes of this Section, a LIBOR Loan will be treated as a Prime Loan upon the termination of the Interest Period. All interest provided for in this Section will be compounded monthly and payable on demand.

# 3.    CONDITIONS PRECEDENT.

3.1    **Extension of Credit.** The obligation of CNB to make any Loan or other extension of credit hereunder is subject to CNB's receipt of each of the following, in form and substance satisfactory to CNB, and duly executed as required by CNB:

    3.1.1    All Loan Documents required by CNB, including but not limited to such documents necessary to perfect CNB's first priority security interest in the Collateral, and evidence of such perfection;

    3.1.2    Evidence that any insurance required by this Agreement or any other Loan Document is in effect;

    3.1.3    Where Borrower or any party signing a Loan Document is a business entity, such authorization documents as CNB may require, in form and substance satisfactory to CNB; and

    3.1.4    The Facility Fee if not previously paid.

3.2    **Conditions to Each Extension of All Loans.** The obligation of CNB to make any Loan or other extension of credit hereunder will be subject to the fulfillment of each of the following conditions to CNB's satisfaction:

    3.2.1    If a Project Advance Loan is to be made, CNB will have received, duly executed and delivered by Borrower, the Project Advance Note;

    3.2.2    If a Standby Letter of Credit is to be issued, CNB will have received an Irrevocable Standby Letter of Credit Application and Letter of Credit Agreement, duly executed and delivered by Borrower, in the form customarily used by CNB;

    3.2.3    The representations and warranties of Borrower set forth in Section 4 of this Agreement and in all other Loan Documents will be true and correct on the date of the making of each Loan or other extension of credit with the same effect as though such representations and warranties had been made on and as of such date;

    3.2.4    There will be no Event of Default or Potential Event of Default under this Agreement or any of the Loan Documents; and

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 11 of 58

3.2.5   All other documents and legal matters in connection with the transactions described in this Agreement will be satisfactory in form and substance to CNB.

## 4. REPRESENTATIONS AND WARRANTIES.

Borrower represents and warrants (and each request for a Loan or other extension of credit will be deemed a representation and warranty made on the date of such request) that:

**4.1 Corporate Existence, Power and Authorization.** Borrower and each Subsidiary is duly organized, validly existing and in good standing under the laws of the state of its organization, and is duly qualified to conduct business in each jurisdiction in which its business is conducted. The execution, delivery and performance of all Loan Documents executed by Borrower are within Borrower's powers and have been duly authorized by the Board of Directors of Borrower and do not require any consent or approval of the stockholders of Borrower.

**4.2 Binding Agreement.** The Loan Documents constitute the valid and legally binding obligations of Borrower, enforceable against Borrower in accordance with their terms.

**4.3 Other Agreements.** The execution and performance of the Loan Documents will not violate any provision of law or regulation (including, without limitation, Regulations X and U of the Federal Reserve Board) or any order of any governmental authority, court, or arbitration board or the Articles of Incorporation or Bylaws of Borrower, or result in the breach of, constitute a default under, contravene any provisions of, or result in the creation of any security interest, lien, charge or encumbrance upon any of the assets of Borrower pursuant to any indenture or agreement to which Borrower or any of its properties is bound, except liens and security interests in favor of CNB.

**4.4 Litigation.** There is no litigation, tax claim, investigation or proceeding pending, threatened against or affecting Borrower, any Subsidiary, any Guarantor or any of their respective properties which, if adversely determined, would have a material adverse effect on the business, operations or condition, financial or otherwise, of Borrower, any Subsidiary or any Guarantor.

**4.5 Financial Condition.** Borrower's most recent financial statements, copies of which have been delivered to CNB, have been prepared in accordance with GAAP and are true, complete and correct and, fairly present the financial condition of Borrower and the Subsidiaries, including operating results, as of the accounting period referenced therein. There has been no material adverse change in the financial condition or business of Borrower or any Subsidiary since the date of such financial statements. Neither Borrower nor any Subsidiary has any material liabilities for taxes or long-term leases or commitments, except as disclosed in the financial statements.

**4.6 No Violations.** Borrower is not, nor is any Subsidiary, in violation of any law, ordinance, rule or regulation to which it or any of its properties is subject, which violation would have a material adverse effect upon the business, property or finances of Borrower or its Subsidiaries.

**4.7 ERISA.** Borrower is in compliance in all material respects with all applicable provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). No Reportable Event (as defined in ERISA and the regulations issued thereunder [other than a "Reportable Event" not subject to the provision for thirty (30) day notice to the Pension Benefit Guaranty Corporation ("PBGC") under such regulations]) has occurred with respect to any benefit plan of Borrower nor are there any unfunded vested liabilities under any benefit plan of Borrower. Borrower has met its minimum funding requirements under ERISA with respect to each of its plans and has not incurred any material liability to the PBGC in connection with any such plan.

137380.4;4
02/02/07 10:19 AM

11

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 12 of 58

4.8    **Consents.** No consent, license, permit, or authorization of, exemption by, notice to, report to, or registration, filing or declaration with, any governmental authority or agency is required in connection with the execution and performance by Borrower of the Loan Documents or the transactions contemplated hereunder.

4.9    **Regulation U.** Borrower is not engaged principally, or as one of its principal activities, in the business of extending credit for the purpose of purchasing or carrying margin stock (within the meaning of Regulations U or X of the Federal Reserve Board). No part of the proceeds of the Loans will be used by Borrower to purchase or carry any such margin stock or to extend credit to others for the purpose of purchasing or carrying such margin stock.

4.10    **Environmental Matters.**

4.10.1 The operations of Borrower, each Subsidiary and Partnership comply in all material respects with all applicable federal, state and local environmental, health and safety statutes, regulations and ordinances, and fully comply with all terms of all required permits and licenses;

4.10.2 Borrower, each Subsidiary and Partnership have received no notices of any threatened or pending governmental or private civil, criminal or administrative proceeding regarding any environmental or health and safety statute, regulation or ordinance and have not been subject to any federal, state or local investigations, inspections or orders regarding any environmental or health and safety statute, regulation or ordinance;

4.10.3 Neither Borrower, any Subsidiary nor Partnership knows of any facts or conditions which may exist which may subject Borrower, any Subsidiary or Partnership to liability or contingent liability and neither Borrower, any Subsidiary or Partnership is presently liable or contingently liable for any removal, remedial, response or other costs or damages in connection with any release into the environment of toxic or hazardous substances or waste included on any federal, state or local hazardous chemical or substance lists under any federal, state or local statute, regulation or ordinance.

4.10.4 Borrower will, at all times, defend and indemnify and hold CNB (which for purposes of this Section 4.10 and Section 9.8 includes CNB's parent company and subsidiaries and all of their respective shareholders, directors, officers, employees, agents, representatives, successors, attorneys, and assigns) harmless from and against any liabilities, claims, demands, causes of action, losses, damages, expenses (including without limitation reasonable attorneys' fees, [which attorneys may be employees of CNB, or may be outside counsel]) costs, settlements, judgments or recoveries directly or indirectly arising out of or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a hazardous substance on, under or about Borrower's property or operations or property leased to or used by Borrower. For these purposes, the term "hazardous substances" means any substance which is or becomes designated as "hazardous" or "toxic" under any Federal, state, or local law. Any obligation or liability of Borrower to CNB under this Section will survive the expiration or termination of this Agreement and the repayment of all Loans and, the payment or performance of all other Obligations of Borrower to CNB.

# 5.    AFFIRMATIVE COVENANTS.

Borrower agrees that until payment in full of all Obligations, Borrower will comply with the following covenants:

5.1    **Books and Records.** Borrower will maintain, in accordance with sound accounting practices, accurate records and books of account showing, among other things, all Inventory and Accounts, the proceeds of the sale or other disposition thereof and the collections therefrom. Borrower will not change

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 13 of
58

the accounting method used to determine Borrower's Inventory cost without notification to CNB. CNB may, at any reasonable time, inspect, audit, and make extracts from, or copies of, all books, records and other data, inspect any of Borrower's properties and confirm balances due on Accounts by direct inquiry to Account Debtors (defined as those Persons obligated on the Accounts). Borrower will furnish CNB with all information regarding the business or finances of Borrower promptly upon CNB's request.

5 2    **Financial Statements.**  Borrower will furnish to CNB on a continuing basis:

5.2.1   Within sixty (60) days after the end of each of the first three quarterly accounting periods of each fiscal year, a financial statement for Borrower AFE consisting of not less than a balance sheet and income statement, prepared in accordance with GAAP, which financial statement may be internally prepared, and accompanied by (a) a Covenant Compliance Certificate demonstrating compliance with the covenants set forth in the Credit Agreement, and (b) Borrower's certification as to whether any event has occurred which constitutes an Event of Default or Potential Event of Default, and if so, stating the facts with respect thereto;

5 2.2   Within one hundred twenty (120) days after the end of each fiscal year, a copy of the annual financial statements for such year for Borrower AFE including therein a balance sheet, income statement, reconciliation of net worth and statement of cash flows, schedules of Partnership contributions, distributions, income and losses, with notes thereto, audited by an independent certified public accountant acceptable to CNB, and certified by such accountant to have been prepared in accordance with GAAP and (a) accompanied by a Covenant Compliance Certificate demonstrating compliance with the covenants set forth in the Credit Agreement, and (b) Borrower's certification as to whether any event has occurred which constitutes an Event of Default or Potential Event of Default, and if so, stating the facts with respect thereto;

5 2.3   As soon as available, any written report pertaining to material items involving Borrower's internal controls submitted to Borrower by Borrower's independent certified public accountants in connection with each annual or interim special audit of the financial condition of Borrower made by such accountants;

5.2.4   Within thirty (30) days after the end of each month which is not also a quarter end, (a) a Borrowing Base Calculation, and (b) a copy of the Detailed Schedule of Fees Receivable based upon an updated schedule of Fees Receivable as of such month end;

5.2.5   Within sixty (60) days after the end of each quarter, (a) a Borrowing Base Calculation, (b) a copy of the Detailed Schedule of Fees Receivable, and (c) a copy of the Project Summary Worksheet;

5 2.6   Within thirty (30) days after filing, Borrower will provide CNB with a copy of its complete Federal Income Tax Return, including but not limited to, each Schedule E attached thereto, together with each Schedule K-1 referred to in such returns;

5.2.7   Within one hundred and eighty (180) days of the end of each of Borrowers' fiscal years, a copy of the Consolidated 20 Year Schedule of Cash Flow Distributions from Real Estate Partnerships; and

5.2.8   Such additional information, reports and/or statements as CNB may, from time to time, reasonably request.

5.3    **Financial Statements of Guarantor.**

137380 4;4
02/02/07 10:19 AM

13

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 14 of 58

5.3.1  No later than Ninety (90) days after Borrower's fiscal year end of each year, Borrower will provide CNB with the financial statement, in form and substance satisfactory to CNB, of Guarantor certified by such Guarantor to be true and correct; and

5.3.2  Within thirty (30) days after filing, Borrower will provide CNB with a copy of the complete Federal Income Tax Return, including but not limited to, each Schedule E attached thereto, together with each Schedule K-1 referred to in such returns, of Guarantor certified to be true and correct by Guarantor.

5.4  **Taxes and Premiums.** Borrower will, and will cause each Subsidiary to, pay and discharge all taxes, assessments, governmental charges and real and personal property taxes, including, but not limited to, federal and state income taxes, employee withholding taxes and payroll taxes, and all premiums for insurance required under this Agreement, prior to the date upon which penalties are attached thereto.

5.5  **Insurance.**

5.5.1  Borrower will, and will cause each Subsidiary and Partnership to, provide and maintain the insurance required under the Loan Documents;

5.5.2  In addition to the insurance required above, Borrower will, and will cause each Subsidiary and Partnership to, maintain insurance of the types and in amounts customarily carried in its lines of business, including, but not limited to, fire, public liability, property damage, business interruption and extra expense and worker's compensation, such insurance to be carried with companies and in amounts satisfactory to CNB, and will deliver to CNB from time to time, upon CNB's request, schedules setting forth all insurance then in effect; and

5.5.3  If Borrower fails to provide, maintain, or furnish to CNB the policies required by this Section, CNB may immediately procure such insurance or other insurance necessary to protect CNB's interest, and Borrower will pay all premiums thereon promptly upon demand by CNB, together with interest, at the highest rate provided for any of the Loans extended under Section 2 above, from the date of expenditure, and if not paid within ten (10) days of CNB's demand therefor (and without constituting a waiver of an Event of Default), at a rate five percent (5%) per year higher than such interest rate until such amount (and interest thereon, to the extent permitted by law), is paid in full.

5.6  **Notice.** Borrower will promptly advise CNB in writing of (a) the opening of any new, or the closing of any existing, places of business, each location at which Inventory or Equipment is or will be kept, and any change to Borrower's name, trade name or other name under which it does business or of any such new or additional name; (b) the occurrence of any Event of Default or Potential Event of Default; (c) any litigation pending or threatened against Borrower, any Subsidiary or any Guarantor where the amount or amounts in controversy exceed $50,000.00; (d) any unpaid taxes of Borrower, any Subsidiary or any Guarantor, which are more than fifteen (15) days delinquent; and (e) any other matter that might materially or adversely affect Borrower's, any Subsidiary's or any Guarantor's financial condition, property or business.

5.7  **Fair Labor Standards Act.** Borrower will, and will cause each Subsidiary to, comply with the requirements of, and all regulations promulgated under, the Fair Labor Standards Act of 1938 (29 U.S.C. Code § 201 et seq.).

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 15 of 58

5.8    **Corporate Existence.** Borrower will, and will cause each Subsidiary to, maintain its corporate existence and all of its rights, privileges and franchises necessary or desirable in the normal course of its business.

5.9    **Compliance with Law.** Borrower will, and will cause each Subsidiary to, comply with all requirements of all applicable laws, rules, regulations, orders of any governmental agency and all material agreements to which they are a party.

5.10   **Financial Tests.** Borrower will maintain:

5.10.1  Tangible Net Worth of not less than $19,000,000.00 at the end of each fiscal quarter;

5.10.2  A ratio of Total Senior Liabilities to Tangible Net Worth plus Subordinated Debt of not more than 2.00 to 1 at the end of each fiscal quarter;

5.10.3  A ratio of Current Assets to Current Liabilities of not less than 1.90 to 1 at the end of each fiscal quarter; and

5.10.4  Net Income after taxes in excess of $1.00, for each fiscal quarter when added to that for the preceding three fiscal quarters.

6.  **NEGATIVE COVENANTS.** Borrower agrees that from the date of this Agreement until payment in full of all Obligations, Borrower, excluding, however, any Partnership or Subsidiary, will not do any of the following, without CNB's prior written consent:

6.1    **Borrowing.** Create, incur, assume or permit to exist any Debt, except (i) Debt to CNB, (ii) trade Debt incurred in the ordinary course of business, (iii) Debt incurred for development expenses in the ordinary course of business, (iv) Debt approved by CNB, which approval will not be unreasonably withheld, and (v) Debt outstanding on December 31, 2006.

6.2    **Sale of Assets.** Sell, lease or otherwise dispose of any of Borrower's or any Subsidiary's assets, other than in the ordinary course of business.

6.3    **Loans.** Make loans or advances to any Person except credit extended to employees or to customers in the ordinary course of its business.

6.4    **Contingent Liabilities.** Assume, guarantee, endorse, contingently agree to purchase or otherwise become liable for the obligation of any Person including Borrower, a Subsidiary, or Affiliate, except (a) in connection with contracts entered into for development of properties on behalf of a to be formed Partnership or formed Partnership, (b) by the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business, and (c) contingent liabilities in favor of CNB.

6.5    **Investments.** Purchase or acquire the obligations or stock of, or any other interest in, any partnership, joint venture, limited liability company or corporation, except (a) interests in Partnerships, (b) direct obligations of the United States of America; and (c) investments in certificates of deposit issued by, and other deposits with, commercial banks organized under the United States or a State thereof having capital of at least One Hundred Million Dollars ($100,000,000.00).

6.6    **Mortgages, Liens, etc.** Mortgage, pledge, hypothecate, grant or contract to grant any security interest of any kind in any property or assets, to anyone except (i) CNB, or (ii) pledges of development

137380.4:4
02/02/07 10:19 AM

15

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 16 of 58

fees made in the ordinary course of property development, or (iii) Debt incurred for development expenses in the ordinary course of business

6.7

6.8    **Involuntary Liens.**  Permit any involuntary liens to arise with respect to any property or assets including but not limited to those arising from the levy of a writ of attachment or execution, or the levy of any state or federal tax lien which lien will not be removed within a period of thirty (30) days.

6.9    **Sale and Leaseback.**  Enter into any sale-leaseback transaction.

6.10    **Mergers and Acquisitions.**    Enter into any merger or consolidation, or acquire all or substantially all the assets of any Person, except in the ordinary course of business and, except a Subsidiary may be merged into or consolidated with another Subsidiary or with Borrower.

6.11    **Primary Depository.**  Take any action inconsistent with CNB remaining Borrower's primary bank of deposit.

6.12    **Event of Default.**  Permit a default to occur under any document or instrument evidencing Debt incurred under any indenture, agreement or other instrument under which such Debt may be issued, or any event to occur under any of the foregoing which would permit any holder of the Debt outstanding thereunder to declare the same due and payable before its stated maturity, whether or not such acceleration occurs or such default be waived.

## 7.  SECURITY AGREEMENT.

7.1    **Grant of Security Interest.**  To secure all Obligations hereunder as well as all other Obligations to CNB, Borrower hereby grants and transfers to CNB a continuing security interest in the following property whether now owned or hereafter acquired:

7.1.1    All of Borrower's Inventory;

7.1.2    All of Borrower's Accounts;

7.1.3    All of Borrower's general intangibles as that term is defined in the Code;

7.1.4    All of Borrower's equipment, as that term is defined in the Code;

7.1.5    All of Borrower's interest in any patents (now existing or pending), copyrights, trade names, trademarks and service marks useful to the operation of Borrower's business;

7.1.6    All notes, drafts, acceptances, instruments, documents of title, policies and certificates of insurance, chattel paper, guaranties and securities now or hereafter received by Borrower or in which Borrower has or acquires an interest;

7.1.7    All cash and noncash proceeds of the foregoing property, including, without limitation, proceeds of policies of fire, credit or other insurance;

7.1.8    All of Borrower's books and records pertaining to any of the Collateral described in this Section 8.1; and

137380.4:4
02/02/07 10:19 AM

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 17 of 58

7.1.9   Any other Collateral which CNB and Borrower may designate as additional security from time to time by separate instruments.

**7.2    Notification of Account Debtors.**  CNB will have the right to notify any Account Debtor to make payments directly to CNB, take control of the cash and noncash proceeds of any Account, and settle any Account, which right CNB may exercise at any time a Potential Event of Default or an Event of Default has occurred or whether Borrower was theretofore making collections thereon.  Until CNB elects to exercise such right, Borrower is authorized on behalf of CNB to collect and enforce the Accounts.  Immediately upon CNB's request, Borrower will deliver to CNB for application in accord with this Agreement, all checks, drafts, cash and other remittances in payment or on account of payment of its Accounts on the banking day following the receipt thereof, and in precisely the form received, except for the endorsement of Borrower where necessary to permit collection of the items, which endorsement Borrower hereby agrees to make.  Pending such delivery, Borrower will not commingle any such checks, cash, drafts and other remittances with any of its other funds or property, but will hold them separate and apart therefrom expressly in trust for CNB.  All such remittances will be accompanied by such statements and reports of collections and adjustments as CNB may specify.

**7.3    Attorney-In-Fact.**  Upon the occurrence of a Potential Event of Default or an Event of Default, CNB or any of its officers is hereby irrevocably made the true and lawful attorney for Borrower with full power of substitution to do the following: (a) endorse the name of Borrower upon any and all checks, drafts, money orders and other instruments for the payment of moneys which are payable to Borrower and constitute collections on Accounts; (b) execute in the name of Borrower any schedules, assignments, instruments, documents and statements which Borrower is obligated to give CNB hereunder; (c) receive, open and dispose of all mail addressed to Borrower; (d) notify the Post Office authorities to change the address for delivery of mail addressed to Borrower to such address as CNB will designate; and (e) do such other acts in the name of Borrower which CNB may deem necessary or desirable to enforce any Account or other Collateral. The powers granted CNB hereunder are solely to protect its interests in the Collateral and will not impose any duty upon CNB to exercise any such powers.

# 8.   EVENTS OF DEFAULT.

**8.1    Events of Default.**  The occurrence of any of the following will constitute an Event of Default:

8.1.1   Borrower fails to pay when due any installment of principal or interest or any other amount payable under the Loan Documents;

8.1.2   Any Person, or any Subsidiary of any Person, which is a party to any Loan Document fails to perform or observe any of the terms, provisions, covenants, conditions, agreements or obligations contained in the Loan Documents;

8.1.3   The entry of an order for relief or the filing of an involuntary petition with respect to Borrower, any Subsidiary or any Guarantor under the United States Bankruptcy Code, the appointment of a receiver, trustee, custodian or liquidator of or for any part of the assets or property of Borrower, any Subsidiary or any Guarantor, or Borrower, any Subsidiary or any Guarantor makes a general assignment for the benefit of creditors;

8.1.4   Any financial statement, representation or warranty made or furnished by Borrower, any Subsidiary or any Guarantor in connection with the Loan Documents proves to be in any material respect incorrect;

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 18 of 58

**9.2.4  Provisional Remedies, Self Help and Foreclosure.** No provision of this Agreement will limit the right of any party to: (a) foreclose against any real property collateral by the exercise of a power of sale under a deed of trust, mortgage or other security agreement or instrument, or applicable law, (b) exercise any rights or remedies as a secured party against any personal property collateral pursuant to the terms of a security agreement or pledge agreement, or applicable law, (c) exercise self help remedies such as setoff, or (d) obtain provisional or ancillary remedies such as injunctive relief or the appointment of a receiver from a court having jurisdiction before, during or after the pendency of any arbitration or referral. The institution and maintenance of an action for judicial relief or pursuit of provisional or ancillary remedies, or exercise of self help remedies will not constitute a waiver of the right of any party, including the plaintiff, to submit any dispute to arbitration or judicial reference.

**9.2.5  Powers and Qualifications of Arbitrators.** The arbitrator(s) will give effect to statutes of limitation, waiver and estoppel and other affirmative defenses in determining any claim. Any controversy concerning whether an issue is arbitratable will be determined by the arbitrator(s). The laws of the State of California will govern. The arbitration award may include equitable and declaratory relief. All arbitrator(s) selected will be required to be a practicing attorney or retired judge licensed to practice law in the State of California and will be required to be experienced and knowledgeable in the substantive laws applicable to the subject matter of the controversy or claim at issue.

**9.2.6  Discovery.** The provisions of California Code of Civil Procedure Section 1283.05 or its successor section(s) are incorporated herein and made a part of this Agreement. Depositions may be taken and discovery may be obtained in any arbitration under this Agreement in accordance with said section(s).

**9.2.7  Miscellaneous.** The arbitrator(s) will determine which is the prevailing party and will include in the award that party's reasonable attorneys' fees and costs (including allocated costs of in-house legal counsel). Each party agrees to keep all controversies and claims and the arbitration proceedings strictly confidential, except for disclosures of information required in the ordinary course of business of the parties or by applicable law or regulation.

**9.3  Cumulative Rights and No Waiver.** All rights and remedies granted to CNB under the Loan Documents are cumulative and no one such right or remedy is exclusive of any other. No failure or delay on the part of CNB in exercising any power, right or remedy under any Loan Document will operate as a waiver thereof, and no single or partial exercise or waiver by CNB of any such power, right or remedy will preclude any further exercise thereof or the exercise of any other power, right or remedy.

**9.4  Applicable Law.** This Agreement will be governed by California law.

**9.5  Lien and Right of Setoff.** Borrower grants to CNB a continuing lien for all Obligations of Borrower to CNB upon any and all moneys, securities and other property of Borrower and the proceeds thereof, now or hereafter held or received by or in transit to CNB from or for Borrower, whether for safekeeping, custody, pledge, transmission, collection or otherwise, and also upon any and all deposits (general or special) and credits of Borrower with, and any and all claims of Borrower against CNB at any time existing. Upon the occurrence of any Event of Default, CNB is authorized at any time and from time to time, without notice to Borrower or any other Person, to setoff, appropriate and apply any or all items hereinabove referred to against all Obligations of Borrower whether under this Agreement or otherwise, and whether now existing or hereafter arising.

**9.6  Notices.** Any notice required under any Loan Document will be given in writing and will be deemed to have been given when personally delivered or when sent by the U.S. mail, postage prepaid,

137380 4:4
02/02/07 10:19 AM

20

certified, return receipt requested, to the address listed at the end of this Agreement or such other address which a party may provide to the other.

9.7    **Counterparts.** This Agreement may be signed in any number of counterparts which, when taken together, will constitute but one agreement.

9.8    **Indemnification.** Borrower will, at all times, defend and indemnify and hold CNB harmless from and against any and all liabilities, claims, demands, causes of action, losses, damages, expenses (including without limitation reasonable attorneys' fees, [which attorneys may be employees of CNB, or may be outside counsel]) costs, settlements, judgments or recoveries arising out of or resulting from (a) any breach of the representations, warranties, agreements or covenants made by Borrower herein; (b) any suit or proceeding of any kind or nature whatsoever against CNB arising from or connected with the transactions contemplated by the Loan Documents or any of the rights and properties assigned to CNB hereunder; and/or (c) any suit or proceeding that CNB may deem necessary or advisable to institute, in the name of CNB, Borrower or both, against any other Person, for any reason whatsoever to protect the rights of CNB hereunder or under any of the documents, instruments or agreements executed or to be executed pursuant hereto, including attorneys' fees and court costs and all other costs and expenses incurred by CNB (or allocable to CNB's in-house counsel), all of which will be charged to and paid by Borrower and will be secured by the Collateral. Any obligation or liability of Borrower to CNB under this Section will survive the expiration or termination of this Agreement and the repayment of all Loans and the payment or performance of all other Obligations of Borrower to CNB.

9.9    **Notices.** Any notice required or permitted under any Loan Document will be given in writing and will be deemed to have been given when personally delivered or when sent by the U.S. mail, postage prepaid, certified, return receipt requested, properly addressed. For the purposes hereof, the addresses of the parties will, until further notice given as herein provided, be as follows:

CNB:                    City National Bank, San Francisco CBS
                        150 California Street, Thirteenth Floor
                        San Francisco, CA 94111
                        Attention: John Brennan, Vice President

with copy to:           City National Bank, Legal Department
                        400 North Roxbury Drive
                        Beverly Hills, California 90210-5021
                        Attention: Managing Counsel, Credit Unit

Borrowers:              A. F. Evans Company, Inc.
                        A. F. Evans Development, Inc.
                        Evans Property Management, Inc.
                        Evans Senior Communities, Inc.
                        1000 Broadway, Suite 300
                        Oakland, CA 94607
                        Attention: Alan F. Greenwald, President

Guarantor:              Arthur F. Evans
                        1000 Broadway, Suite 300
                        Oakland, CA 94607

9.10    **Assignments.** The provisions of this Agreement are hereby made applicable to and will inure to the benefit of CNB's successors and assigns and Borrower's successors and assigns; provided, however,

Case: 09-41727     Doc# 22     Filed: 03/09/09     Entered: 03/09/09 18:52:06     Page 20 of 58

that Borrower may not assign or transfer its rights or obligations under this Agreement without the prior written consent of CNB. CNB may assign this Agreement and its rights and duties hereunder. CNB reserves the right to sell, assign, transfer, negotiate, or grant participations in all or any part of, or any interest in CNB's rights and benefits hereunder. In connection therewith, CNB may disclose all documents and information which CNB now or hereafter may have relating to Borrower or Borrower's business.

9.11    **Accounting Terms.** Except as otherwise stated in this Agreement, all accounting terms and financial covenants and information will be construed in conformity with, and all financial data required to be submitted will be prepared in conformity with, GAAP as in effect on the date hereof.

9.12    **Severability.** Any provision of the Loan Documents which is prohibited or unenforceable in any jurisdiction, will be, only as to such jurisdiction, ineffective to the extent of such prohibition or unenforceability, but all the remaining provisions of the Loan Documents will remain valid.

9.13    **Complete Agreement.** This Agreement, together with the other Loan Documents, constitutes the entire agreement of the parties and supersedes any prior or contemporaneous oral or written agreements or understandings, if any, which are merged into this Agreement. This Agreement may be amended only in a writing signed by Borrower and CNB.

9.14    **Joint and Several.** Should more than one Person sign this Agreement, the obligations of each signer will be joint and several.

This Agreement is executed as of the date stated at the top of the first page.

"Borrower"

**A. F. Evans Company, Inc.,** a
California corporation

By: _____
Alan F. Greenwald, President/CEO

**A. F. Evans Development, Inc.,** a
California corporations

By: _____
John Robertson, President

**Evans Property Management, Inc.,** a
California corporations

By: _____
Jennifer Borland, President

**Evans Senior Communities, Inc.,** a
California corporations

By: _____
John Rimbach, President

"CNB"

**City National Bank,** a
national banking association

137380.4;4
02/02/07 10:42 AM

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 21 of
58

# CHANGE IN TERMS AGREEMENT

## AMORTIZING PROJECT ADVANCE NOTE No. 75

Borrower:   A. F. EVANS COMPANY, INC., a California Corporation;

A. F. EVANS DEVELOPMENT, INC., a California Corporation;

EVANS PROPERTY MANAGEMENT, INC., a California Corporation; and

EVANS SENIOR COMMUNITIES, INC., a California Corporation

1000 Broadway, Suite 300
Oakland, CA 94607

Lender:   CITY NATIONAL BANK, a national banking association

555 S Flower Street, 16th Floor
Los Angeles, CA 900714104

Note No. 75
Principal Amount: $653,333.26

---

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note ("Note") dated March 16, 2007 in favor of City National Bank, NA ("Lender") executed by A. F. Evans Company, Inc., a California corporation ("Borrower") in the original principal amount of $800,000. The principal balance of the Note as of February 28, 2008 is $653,333.26 plus accrued interest.

**DESCRIRIPTION OF CHANGE IN TERMS.** Borrower shall pay to Lender Interest on the unpaid principal balance thereof, at the rate of 2.00 percentage points per annum in excess of Lender's Prime Rate. The maturity date shall be December 31, 2009.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations including all agreements evidenced or securing the obligation, remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligations as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction or the obligation. It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation including accommodation parties. Unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of the Agreement or otherwise will not be released by it. The waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

[Signature Page Follows]

# CHANGE IN TERMS AGREEMENT

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT

BORROWER:

A. F. EVANS COMPANY, INC. A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, PRESIDENT/CEO OF A. F. EVANS
COMPANY, INC., A CALIFORNIA CORPORATION


A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF A. F. EVANS
DEVELOPMENT, INC., A CALIFORNIA CORPORATION


EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
PROPERTY MANAGEMENT, INC., A CALIFORNIA
CORPORATION


EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
SENIOR COMMUNITIES, INC., A CALIFORNIA
CORPORATION



CITY NATIONAL BANK

The way up.

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No. | Call / Coll. | Account | Officer | Initials |
|-----------|-----------|----------|----------|--------------|---------|---------|----------|
| $1,500,000.00 | 06-13-2005 | 06-15-2009 | 00049 | | 657273 | DM | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

Borrower:   A. F. EVANS COMPANY, INC., A CALIFORNIA
            CORPORATION
            1000 BROADWAY, SUITE 450
            OAKLAND, CA 94607

Lender:     City National Bank, NA
            San Francisco Financial Center Commercial Banking
            Services #434000
            150 California Street
            San Francisco, CA 94104

**Principal Amount: $1,500,000.00**                                                    **Date of Note: June 13, 2005**

**PROMISE TO PAY.** A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION ("Borrower") promises to pay to City National Bank, NA ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Thousand & 00/100 Dollars ($1,500,000.00), together with interest on the unpaid principal balance from June 13, 2005, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 47 monthly consecutive principal payments of $31,250.00 each, beginning July 31, 2005, with interest calculated on the unpaid principal balances at an interest rate based on the City National Bank Prime Rate (currently 6.000%), resulting in an initial interest rate of 6.000%; 47 monthly consecutive interest payments, beginning July 31, 2005, with interest calculated on the unpaid principal balances at an interest rate based on the City National Bank Prime Rate (currently 6.000%), resulting in an initial interest rate of 6.000%; and one principal and interest payment of $31,328.13 on June 15, 2009, with interest calculated on the unpaid principal balances at an interest rate based on the City National Bank Prime Rate (currently 6.000%), resulting in an initial interest rate of 6.000%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the City National Bank Prime Rate (the "Index"). Prime Rate shall mean the rate most recently announced by Lender at its principal office in Beverly Hills, California, as its "Prime Rate." Any change in the Prime Rate shall become effective on the same business day on which the Prime Rate shall change, without prior notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 6.000%. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment due of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Wherever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by the original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: City National Bank, NA; San Francisco Financial Center Commercial Banking Services #434000; 150 California Street; San Francisco, CA 94104.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase by 5.000 percentage points, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going concern, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property,

Loan No: 00049                       **PROMISSORY NOTE**
                                          (Continued)                                    Page 2

commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: City National Bank, NA. P. O. Box 60938, Los Angeles, CA 00060-0938

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

A. F. EVANS COMPANY, INC. A CALIFORNIA CORPORATION

By: _____
    Authorized Officer


CITY NATIONAL BANK
The way up.

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,630,000.00 | 06-13-2005 | 06-24-2009 | 00050 | | 657273 | DM | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION
1000 BROADWAY, SUITE 450
OAKLAND, CA 94607

**Lender:** City National Bank, NA
San Francisco Financial Center Commercial Banking Services #434000
150 California Street
San Francisco, CA 94104

**Principal Amount: $1,630,000.00** **Date of Note: June 13, 2005**

**PROMISE TO PAY.** A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION ("Borrower") promises to pay to City National Bank, NA ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Six Hundred Thirty Thousand & 00/100 Dollars ($1,630,000.00), together with interest on the unpaid principal balance from June 13, 2005, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, Borrower will pay this loan in accordance with the following payment schedule: 47 monthly consecutive principal payments of $33,958.33 each, beginning July 31, 2005, with interest calculated on the unpaid principal balances at an interest rate based on the City National Bank Prime Rate (currently 6.000%), resulting in an initial interest rate of 6.000%; 47 monthly consecutive interest payments, beginning July 31, 2005, with interest calculated on the unpaid principal balances at an interest rate based on the City National Bank Prime Rate (currently 6.000%), resulting in an initial interest rate of 6.000%; and one principal and interest payment of $34,094.32 on June 24, 2009, with interest calculated on the unpaid principal balances at an interest rate based on the City National Bank Prime Rate (currently 6.000%), resulting in an initial interest rate of 6.000%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled and that the Index does not change; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the City National Bank Prime Rate (the "Index"). Prime Rate shall mean the rate most recently announced by Lender at its principal office in Beverly Hills, California, as its "Prime Rate." Any change in the Prime Rate shall become effective on the same business day on which the Prime Rate shall change, without prior notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 6.000%. The interest rate or rates to be applied to the unpaid principal balance of this Note will be the rate or rates set forth herein in the "Payment" section. Notwithstanding any other provision of this Note, after the first payment stream, the interest rate for each subsequent payment stream will be effective as of the last payment date of the just-ending payment stream. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: City National Bank, NA; San Francisco Financial Center Commercial Banking Services #434000; 150 California Street; San Francisco, CA 94104.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase by 5.000 percentage points, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of ...

Loan No: 00050                    **PROMISSORY NOTE**
                                      (Continued)

commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: City National Bank, NA, P. O. Box 60938, Los Angeles, CA 90060-0938.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

By: _____
    Authorized Officer

LASER PRO Lending, Ver. 5.24.10.003  Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - CA  F:\CFI\LPL\D20.FC  TR-11074  PR-COMML



**CITY NATIONAL BANK**
The way up.•

# PROMISSORY NOTE

| Principal $800,000.00 | Loan Date 12-27-2005 | Maturity 11-30-2007 | Loan No 00075 | Call / Coll | Account 667273 | Officer DM | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:**  A. F. EVANS COMPANY, INC., A CALIFORNIA
CORPORATION
1000 BROADWAY, SUITE 450
OAKLAND, CA 94607

**Lender:**  City National Bank, NA
San Francisco Financial Center Commercial Banking
Services #434000
150 California Street
San Francisco, CA 94104

**Principal Amount: $800,000.00**       **Initial Rate: 7.250%**       **Date of Note: December 27, 2005**

**PROMISE TO PAY.** A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION ("Borrower") promises to pay to City National Bank, NA ("Lender"), or order, in lawful money of the United States of America, the principal amount of Eight Hundred Thousand & 00/100 Dollars ($800,000.00), together with interest on the unpaid principal balance from December 27, 2005, until paid in full.

**PAYMENT.** Borrower will pay this loan in one principal payment of $800,000.00 plus interest on November 30, 2007. This payment due on November 30, 2007, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 31, 2006, with all subsequent interest payments to be due on the last day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the City National Bank Prime Rate (the "Index"). Prime Rate shall mean the rate most recently announced by Lender at its principal office in Beverly Hills, California, as its "Prime Rate." Any change in the Prime Rate shall become effective on the same business day on which the Prime Rate shall change, without prior notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 7.250%. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, resulting in an initial rate of 7.250%. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: City National Bank, NA; San Francisco Financial Center Commercial Banking Services #434000; 150 California Street; San Francisco, CA 94104.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase to 5.000 percentage points over the Index, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guaran

# PROMISSORY NOTE
## (Continued)

of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: City National Bank, NA, P. O. Box 60938, Los Angeles, CA 90060-0938

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

By: _____
      Authorized Officer

LASER PRO Lending, Ver. 5.34.10.002 Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved. - CA T:\CFI\LPL\D20.FC TR-45272 PR-LVARIAD



# PROMISSORY NOTE

| Principal $500,000.00 | Loan Date 12-27-2005 | Maturity 11-30-2007 | Loan No 00076 | Call / Coll | Account 657273 | Officer DM | Initials |
|---|---|---|---|---|---|---|---|
| References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. | | | | | | | |

Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** A. F. EVANS COMPANY, INC., A CALIFORNIA
CORPORATION
1000 BROADWAY, SUITE 450
OAKLAND, CA 94607

**Lender:** City National Bank, NA
San Francisco Financial Center Commercial Banking
Services #434000
150 California Street
San Francisco, CA 94104

---

**Principal Amount: $500,000.00**    **Initial Rate: 7.250%**    **Date of Note: December 27, 2005**

**PROMISE TO PAY.** A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION ("Borrower") promises to pay to City National Bank, NA ("Lender"), or order, in lawful money of the United States of America, the principal amount of **Five Hundred Thousand & 00/100 Dollars** ($500,000.00), together with interest on the unpaid principal balance from December 27, 2005, until paid in full.

**PAYMENT.** Borrower will pay this loan in one principal payment of $500,000.00 plus interest on November 30, 2007. This payment due on November 30, 2007, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning January 31, 2006, with all subsequent interest payments to be due on the last day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the City National Bank Prime Rate (the "Index"). Prime Rate shall mean the rate most recently announced by Lender at its principal office in Beverly Hills, California, as its "Prime Rate." Any change in the Prime Rate shall become effective on the same business day on which the Prime Rate shall change, without prior notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. **The interest rate** currently is 7.250%. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate equal to the Index, resulting in an initial rate of 7.250%. **NOTICE:** Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: City National Bank, NA; San Francisco Financial Center Commercial Banking Services #434000; 150 California Street; San Francisco, CA 94104.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged **5.000%** of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase to 5.000 percentage points over the Index, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, ...

Case: 09-41727   Doc# 22   Filed: 03/09/09   Entered: 03/09/09   Page 32 of 58

of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of California. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: City National Bank, NA, P. O. Box 60938, Los Angeles, CA 90060-0938

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

By: _____
Authorized Officer

LASER PRO Lending, Ver. 5.24.10.002 Copr. Harland Financial Solutions, Inc. 1997, 2006.   All Rights Reserved.   - CA  T:\CFI\LPL\D20.FC  TR-45273  PR-LVARMAD



**CITY NATIONAL BANK**
The way up.·

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $500,000.00 | 02-09-2007 | 01-31-2012 | 00076 | | 657273 | JB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * * " has been omitted due to text length limitations.

**Borrower:** A. F. EVANS COMPANY, INC., A CALIFORNIA
CORPORATION; A. F. EVANS DEVELOPMENT,
INC., A CALIFORNIA CORPORATION; EVANS
PROPERTY MANAGEMENT, INC., A CALIFORNIA
CORPORATION; and EVANS SENIOR
COMMUNITIES, INC., A CALIFORNIA
CORPORATION
1000 BROADWAY, SUITE 300
OAKLAND, CA 94607

**Lender:** City National Bank, NA
San Francisco Financial Center Commercial Banking
Services #434000
150 California Street
San Francisco, CA 94104

**Principal Amount: $500,000.00**     **Initial Rate: 8.250%**     **Date of Agreement: February 9, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note ("Note") dated December 27, 2005, in favor of City National Bank, NA ("Lender"), executed by A. F. Evans Company, Inc., a California corporation ("Borrower") in the original principal amount of $500,000.00, payable in full on November 30, 2007, subject to any installment maturities in the Note. The principal balance on the Note as of February 9, 2007 is $500,000.00, on which interest is paid to January 31, 2007.

**DESCRIPTION OF CHANGE IN TERMS.** Accrued interest shall be payable on the last day of each month. Principal shall hereinafter be payable on the last day of each month in fifty-nine (59) equal, successive installments of $8,333.34 each, payable with each installment of interest, commencing February 28, 2007 with a final installment of $8,332.94 plus unpaid interest, due and payable in full on January 31, 2012.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**CONTINUED ON NEXT PAGE**

Loan No: 00076

# CHANGE IN TERMS AGREEMENT
## (Continued)

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, President/CEO of A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By: _____
JOHN J. ROBERTSON, President of A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

By: _____
JENNIFER BORLAND, President of EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

By: _____
JOHN RIMBACH, President of EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 35 of 58



**CITY NATIONAL BANK**

*The way up.®*

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|----------|-------------|---------|---------|----------|
| $800,000.00 | 02-09-2007 | 01-31-2012 | 00075 | | 657273 | JB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** A. F. EVANS COMPANY, INC., A CALIFORNIA
CORPORATION; A. F. EVANS DEVELOPMENT,
INC., A CALIFORNIA CORPORATION; EVANS
PROPERTY MANAGEMENT, INC., A CALIFORNIA
CORPORATION; and EVANS SENIOR
COMMUNITIES, INC., A CALIFORNIA
CORPORATION
1000 BROADWAY, SUITE 300
OAKLAND, CA 94607

**Lender:** City National Bank, NA
San Francisco Financial Center Commercial Banking
Services #434000
150 California Street
San Francisco, CA 94104

---

**Principal Amount: $800,000.00**      **Initial Rate: 8.250%**      **Date of Agreement: February 9, 2007**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note ("Note") dated December 27, 2006, in favor of City National Bank, NA ("Lender"), executed by A. F. Evans Company, Inc., a California corporation ("Borrower") in the original principal amount of $800,000.00, payable in full on November 30, 2007, subject to any installment maturities in the Note. The principal balance on the Note as of February 9, 2007 is $800,000.00, on which interest is paid to January 31, 2007.

**DESCRIPTION OF CHANGE IN TERMS.** Accrued interest shall be payable on the last day of each month. Principal shall hereinafter be payable on the last day of each month in fifty-nine (59) equal, successive installments of $13,333.34 each, payable with each installment of interest, commencing February 28, 2007 with a final installment of $13,332.94 plus unpaid interest, due and payable in full on January 31, 2012.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**CONTINUED ON NEXT PAGE**

Loan No: 00075

# CHANGE IN TERMS AGREEMENT
## (Continued)

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, President/CEO of A. F.
EVANS COMPANY, INC., A CALIFORNIA
CORPORATION

A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By: _____
JOHN J. ROBERTSON, President of A. F. EVANS
DEVELOPMENT, INC., A CALIFORNIA
CORPORATION

EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

By: _____
JENNIFER BORLAND, President of EVANS
PROPERTY MANAGEMENT, INC., A CALIFORNIA
CORPORATION

EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

By: _____
JOHN RIMBACH, President of EVANS SENIOR
COMMUNITIES, INC., A CALIFORNIA
CORPORATION

LASER PRO Lending, Ver. 5.36.00.008 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - CA F:\CPL\PL030C.FC TR-E3078 PR-17

# CHANGE IN TERMS AGREEMENT

## AMORTIZING PROJECT ADVANCE NOTE No. 49

| | |
|---|---|
| **Borrower:** | A. F. EVANS COMPANY, INC., a California Corporation; |
| | A. F. EVANS DEVELOPMENT, INC., a California Corporation; |
| | EVANS PROPERTY MANAGEMENT, INC., a California Corporation; and |
| | EVANS SENIOR COMMUNITIES, INC., a California Corporation |
| | 1000 Broadway, Suite 300 Oakland, CA 94607 |

**Lender:** CITY NATIONAL BANK, a national banking association

555 S Flower Street, 16th Floor
Los Angeles, CA 900714104

Note No. 49
**Principal Amount:** **$531,250.**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note ("Note") dated June 15, 2005 in favor of City National Bank, NA ("Lender") executed by A. F. Evans Company, Inc., a California corporation ("Borrower") in the original principal amount of $875,000. The principal balance of the Note as of February 28, 2008 is $531,250 plus accrued interest

**DESCRIRIPTION OF CHANGE IN TERMS.** Borrower shall pay to Lender Interest on the unpaid principal balance thereof, at the rate of 2.00 percentage points per annum in excess of Lender's Prime Rate.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations including all agreements evidenced or securing the obligation, remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligations as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction or the obligation. It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation including accommodation parties. Unless a party is expressly released by Lender in writing, Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of the Agreement or otherwise will not be released by it The waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions

[Signature Page Follows]

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 39 of 58

# CHANGE IN TERMS AGREEMENT

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

A. F. EVANS COMPANY, INC. A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, PRESIDENT/CEO OF A. F. EVANS
COMPANY, INC., A CALIFORNIA CORPORATION


A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF A. F. EVANS
DEVELOPMENT, INC., A CALIFORNIA CORPORATION


EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
PROPERTY MANAGEMENT, INC., A CALIFORNIA
CORPORATION


EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
SENIOR COMMUNITIES, INC., A CALIFORNIA
CORPORATION

# AMENDED, RESTATED and CONSOLIDATED REVOLVING NOTE

**Borrower:**  A. F. EVANS COMPANY, INC., a
California Corporation;

A. F. EVANS DEVELOPMENT, INC., a
California Corporation;

EVANS PROPERTY MANAGEMENT,
INC., a California Corporation; and

EVANS SENIOR COMMUNITIES, INC.,
a California Corporation

1000 Broadway, Suite 300
Oakland, CA 94607

**Lender:**  CITY NATIONAL BANK, a national
banking association

555 South Flower Street
Los Angeles, CA 90071

**Note Amount:** $7,426,674.42

---

**PROMISE TO PAY.** A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION; A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION; EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION; and EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION ("Borrower") jointly and severally promise to pay to City National Bank, a national banking association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Million Four Hundred Twenty-six Thousand Six Hundred Seventy-four and 42/100 Dollars ($7,426,674 42), together with (i) interest on the unpaid principal balance thereof, at the rate of 2.000 percentage points per annum in excess of Lender's Prime Rate (as defined below) in effect from time to time, plus (ii) interest, late charges and related costs, fees and expenses that have accrued prior to the date hereof with respect to the Revolving Credit Loans pursuant to the terms of the Credit Agreement and other Loan Documents until paid in full  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Forbearance Agreement identified below.

**AMENDMENT AND RESTATEMENT**  This Amended, Restated and Consolidated Revolving Note is executed and delivered to Lender pursuant to the terms of Section 2 02 of that certain Forbearance Agreement among Borrower, Lender and Arthur F Evans of even date herewith (as the as same may be amended from time to time, the "Forbearance Agreement"), and is entitled to the benefit of the Credit Agreement, the Collateral and the Loan Documents identified therein  Reference is hereby made to the Forbearance Agreement and the other documents referenced therein for a complete statement of the terms and conditions governing the indebtedness evidenced by this Note.  This Note amends, restates and consolidates in their entirety the Revolving Notes evidencing the Revolving Credit Loans identified in Section 2 1 4 of the Credit Agreement, and this Note shall fully supersede the provisions of such notes  This Note does not amend, restate or otherwise affect in any way any notes evidencing the Project Advance Loans identified in Section 2 3 4 of the Credit Agreement, which, are to be either amended, restated and consolidated by way of the notes specified in Sections 2 03 and 2 04 of the Forbearance Agreement (respectively, the "Consolidated Project Advance Note" and the " Amortizing Project Advance Notes").

**PAYMENT.**  Borrower shall pay the indebtedness evidenced by this Note, as follows: (i) Borrower shall make payments in reduction of the principal portion of the indebtedness evidenced by this Note in the amounts and at the times specified in Section 3.02 of the Forbearance Agreement, including: (A) by March 31, 2008, Borrower shall make payments in amounts sufficient to reduce the principal portion of the indebtedness evidenced by this Note to an amount which, when added to the then-outstanding aggregate principal balance of the indebtedness evidenced by the Consolidated Project Advance Note and the Amortizing Project Advance Notes equals the sum of $16,500,000 (except to the extent that such amount and date may be modified by application of any Asset Extension Period under Section 3 02 c of the Forbearance Agreement); (B) by September 15, 2008, Borrower shall make payments in amounts sufficient to reduce the principal portion of the indebtedness evidenced by this Note to an amount which, when added to the then-outstanding aggregate principal balance of the indebtedness evidenced by the Consolidated Project Advance Note and the Amortizing Project Advance Notes, equals the sum of $4,000,000 (except to the extent that such amount and date may be modified by application of any Asset Extension Period under Section

3.02.c of the Forbearance Agreement); and (C) Borrower shall make payments in reduction of principal in the amounts and at the times specified in Section 3.02 b of the Forbearance Agreement; and (ii) Borrower shall pay all Obligations under this note, in full, by October 1, 2008. Unless otherwise agreed or required by applicable law, payments shall be applied first to any accrued unpaid interest; then to principal, then to any unpaid collection costs; and then to any late charges. As used herein, the term "Prime Rate" means a base rate of interest which Lender establishes from time to time and which serves as the basis upon which effective rates of interest are calculated for those loans making reference thereto. Any change in the rate of interest on this Note due to a change in the Prime Rate shall become effective on the date each change in the Prime Rate is announced within Lender. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower shall pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower shall remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: City National Bank, a national banking association; 555 South Flower Street; Los Angeles, CA 90071.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon an Event of Default, the variable interest rate on this Note shall immediately increase to 5.000 percentage points over the otherwise applicable rate, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note, or under the Consolidated Project Advance Note or the Amortizing Project Advance Notes.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower, which failure remains uncured within 7 days following Borrower's receipt of written notice thereof from Lender.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents, which default remains uncured within 7 days following Borrower's receipt of written notice thereof from Lender or such other creditor or person.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, Borrower's voluntary participation in any type of creditor workout with a party other than Lender, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower; provided that in the case of the involuntary appointment of a receiver or the commencement of a bankruptcy or insolvency proceeding against Borrower, such receiver or such proceeding is not dismissed within 7 days following the appointment or commencement.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount equal to the amount of credit at issue in the proceedings or such lesser amount as is determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or Guarantor revokes or disputes the validity of, or liability under, the Guaranty; Guarantor dies or becomes legally incompetent under circumstances by which Guarantor's estate or representative does not assume (directly or on behalf of Guarantor) Guarantor's liability under the Guaranty.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or which causes Lender to reasonably believe that the prospect of payment or performance of this Note is materially impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon an Event of Default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower shall pay that amount. In addition, upon a Forbearance Default, Lender shall have the additional remedies specified in Section 8.02 of the Forbearance Agreement.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also shall pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note shall be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**DISHONORED ITEM FEE.** Borrower shall pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure, to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: City National Bank, a national banking association, P.O. Box 60938, Los Angeles, CA 90060-0938.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

[Signature Page Follows]

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

A. F. EVANS COMPANY, INC. A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, PRESIDENT/CEO OF A. F. EVANS
COMPANY, INC., A CALIFORNIA CORPORATION

A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF A. F. EVANS
DEVELOPMENT, INC., A CALIFORNIA CORPORATION

EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
PROPERTY MANAGEMENT, INC., A CALIFORNIA
CORPORATION

EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

By: _____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
SENIOR COMMUNITIES, INC., A CALIFORNIA
CORPORATION

# AMENDED, RESTATED and CONSOLIDATED PROJECT ADVANCE NOTE

Borrower: A. F. EVANS COMPANY, INC., a California Corporation;

A. F. EVANS DEVELOPMENT, INC., a California Corporation;

EVANS PROPERTY MANAGEMENT, INC., a California Corporation; and

EVANS SENIOR COMMUNITIES, INC., a California Corporation

1000 Broadway, Suite 300
Oakland, CA 94607

Lender: CITY NATIONAL BANK, a national banking association

555 South Flower Street, 16th floor
Los Angeles, CA 90071

Note Amount: $7,700,000.00

**PROMISE TO PAY.** A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION; A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION; EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION; and EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION ("Borrower") jointly and severally promise to pay to City National Bank, a national banking association ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Million Seven Hundred Thousand and 00/100 Dollars ($7,700,000.00), together with (i) interest on the unpaid principal balance thereof, at the rate of 2.000 percentage points per annum in excess of Lender's Prime Rate (as defined below) in effect from time to time, plus (ii) interest, late charges and related costs, fees and expenses that have accrued prior to the date hereof with respect to the Project Advance Loans (other than the Amortizing Project Advance Loans) pursuant to the terms of the Credit Agreement and other Loan Documents until paid in full. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Forbearance Agreement identified below.

**AMENDMENT AND RESTATEMENT.** This Amended, Restated and Consolidated Project Advance Note is executed and delivered to Lender pursuant to the terms of Section 2.03 of that certain Forbearance Agreement among Borrower, Lender and Arthur F. Evans of even date herewith (as the as same may be amended from time to time, the "Forbearance Agreement"), and is entitled to the benefit of the Credit Agreement, the Collateral and the Loan Documents identified therein. Reference is hereby made to the Forbearance Agreement and the other documents referenced therein for a complete statement of the terms and conditions governing the indebtedness evidenced by this Note. This Note amends, restates and consolidates in their entirety the Project Advance Notes evidencing the Project Advance Credit Loans identified in Section 2.3.4 of the Credit Agreement (other than the Amortizing Project Advance Loans), and this Note shall fully supersede the provisions of such notes. This Note does not amend, restate or otherwise affect in any way any notes evidencing Revolving Loans or Amortizing Project Advance notes which are to be either amended, restated and consolidated by way of the notes specified in Sections 2.02 and 2.04 of the Forbearance Agreement (the "Consolidated Revolving Note" and the "Amortizing Project Advance Notes").

**PAYMENT.** Borrower shall pay the indebtedness evidenced by this Note, as follows: (i) Borrower shall make payments in reduction of the principal portion of the indebtedness evidenced by this Note in the amounts and at the times specified in Section 3.02 of the Forbearance Agreement, including: (A) by March 31, 2008, Borrower shall make payments in amounts sufficient to reduce the principal portion of the indebtedness evidenced by this Note to an amount which, when added to the then-outstanding aggregate principal balance of the indebtedness evidenced by the Consolidated Revolving Note and the Amortizing Project Advance Notes, equals the sum of $16,500,000 (except to the extent that such amount and date may be modified by application of any Asset Extension Period under Section 3.02.c of the Forbearance Agreement); (B) by September 15, 2008, Borrower shall make payments in amounts sufficient to reduce the principal portion of the indebtedness evidenced by this Note to an amount which, when added to the then-outstanding aggregate principal balance of the indebtedness evidenced by the Consolidated Revolving Note, and the Amortizing Project Advance Notes, equals the sum of $4,000,000 (except to the extent that

such amount and date may be modified by application of any Asset Extension Period under Section 3.02 c of the Forbearance Agreement; and (ii) Borrower shall pay all Obligations under this Note, in full, by October 1, 2008. Unless otherwise agreed or required by applicable law, payments shall be applied first to any accrued unpaid interest; then to principal, then to any unpaid collection costs; and then to any late charges. As used herein, the term "Prime Rate" means a base rate of interest which Lender establishes from time to time and which serves as the basis upon which effective rates of interest are calculated for those loans making reference thereto. Any change in the rate of interest on this Note due to a change in the Prime Rate shall become effective on the date each change in the Prime Rate is announced within Lender. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower shall pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower shall remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: City National Bank, a national banking association; 555 South Flower Street, 16th Floor, Los Angeles, CA 90071.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon and Event of Default, the variable interest rate on this Note shall immediately increase to 5.000 percentage points over the otherwise applicable rate, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note, or under the Consolidated Revolving Note or the Amortizing Project Advance Notes.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower which failure remains uncured within 7 days following Borrower's receipt of written notice thereof from Lender.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents, which default remains uncured within 7 days following Borrower's receipt of written notice thereof from Lender or such other creditor or person.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, Borrower's voluntary participation in any type of creditor workout with a party other than Lender, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower; provided that in the case of the involuntary appointment of a receiver or the commencement of a bankruptcy or insolvency proceeding against Borrower, such receiver or such proceeding is not dismissed within 7 days following the appointment or commencement.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount equal to the amount of credit at issue in the proceedings or such lesser amount as is determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor revokes or disputes the validity of, or liability under, the Guaranty; Guarantor dies or becomes legally incompetent under circumstances by which Guarantor's estate or representative does not assume (directly or on behalf of Guarantor) Guarantor's liability under the Guaranty.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or which causes Lender to reasonably believe that the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**LENDER'S RIGHTS.** Upon an Event of Default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower shall pay that amount. In addition, upon a Forbearance Default, Lender shall have the additional remedies specified in Section 8.02 of the Forbearance Agreement.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also shall pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note shall be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of SAN FRANCISCO County, State of California.

**DISHONORED ITEM FEE.** Borrower shall pay a fee to Lender of $18.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure, to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: City National Bank, a national banking association, P.O. Box 60938, Los Angeles, CA 90060-0938.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional secured or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

[Signature Page Follows]

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

By:_____
ALAN F. GREENWALD, PRESIDENT/CEO OF A. F. EVANS COMPANY, INC., A CALIFORNIA CORPORATION

A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By:_____
ALAN F. GREENWALD, VICE PRESIDENT OF A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

By:_____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

By:_____
ALAN F. GREENWALD, VICE PRESIDENT OF EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

Case: 09-41727    Doc# 22    Filed: 03/09/09    Entered: 03/09/09 18:52:06    Page 53 of
58

# CHANGE IN TERMS AGREEMENT

## AMORTIZING PROJECT ADVANCE NOTE No. 50

| | |
|---|---|
| Borrower: | A. F. EVANS COMPANY, INC , a California Corporation; |
| | A. F. EVANS DEVELOPMENT, INC , a California Corporation; |
| | EVANS PROPERTY MANAGEMENT, INC , a California Corporation; and |
| | EVANS SENIOR COMMUNITIES, INC , a California Corporation |
| | 1000 Broadway, Suite 300 Oakland, CA  94607 |

Lender:    CITY NATIONAL BANK, a national banking association

555 S Flower Street, 16th Floor
Los Angeles, CA  900714104

Note No. 50
**Principal Amount:  $577,291.77**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note ("Note") dated March 12, 2007 in favor of City National Bank, NA ("Lender") executed by A. F. Evans Company, Inc , a California corporation ("Borrower") in the original principal amount of $950,833 40   The principal balance of the Note as of February 28, 2008 is $577,291 77 plus accrued interest.

**DESCRIRIPTION OF CHANGE IN TERMS.** Borrower shall pay to Lender Interest on the unpaid principal balance thereof, at the rate of 2 00 percentage points per annum in excess of Lender's Prime Rate.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations including all agreements evidenced or securing the obligation, remain unchanged and in full force and effect  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligations as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction or the obligation  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation including accommodation parties  Unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of the Agreement or otherwise will not be released by it. The waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

[Signature Page Follows]

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

A. F. EVANS COMPANY, INC. A CALIFORNIA CORPORATION

By: _____

    ALAN F. GREENWALD, PRESIDENT/CEO OF A. F. EVANS
    COMPANY, INC., A CALIFORNIA CORPORATION

A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By: _____

    ALAN F. GREENWALD, VICE PRESIDENT OF A. F. EVANS
    DEVELOPMENT, INC., A CALIFORNIA CORPORATION

EVANS PROPERTY MANAGEMENT, INC, A CALIFORNIA CORPORATION

By: _____

    ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
    PROPERTY MANAGEMENT, INC., A CALIFORNIA
    CORPORATION

EVANS SENIOR COMMUNITIES, INC, A CALIFORNIA CORPORATION

By: _____

    ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
    SENIOR COMMUNITIES, INC., A CALIFORNIA
    CORPORATION

Case: 09-41727   Doc# 22   Filed: 03/09/09   Entered: 03/09/09 18:52:06   Page 56 of 58

# CHANGE IN TERMS AGREEMENT

## AMORTIZING PROJECT ADVANCE NOTE No. 76

Borrower:   A. F. EVANS COMPANY, INC., a
California Corporation;

A. F. EVANS DEVELOPMENT, INC., a
California Corporation;

EVANS PROPERTY MANAGEMENT,
INC., a California Corporation; and

EVANS SENIOR COMMUNITIES, INC.,
a California Corporation

1000 Broadway, Suite 300
Oakland, CA 94607

Lender:   CITY NATIONAL BANK, a national
banking association

555 S Flower Street, 16th Floor
Los Angeles, CA 900714104

Note No. 76
**Principal Amount:   $408,304.61**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** Promissory Note ("Note") dated March 16, 2007 in favor of City National Bank, NA ("Lender") executed by A. F. Evans Company, Inc., a California corporation ("Borrower") in the original principal amount of $500,000.  The principal balance of the Note as of February 28, 2008 is $408,304.61 plus accrued interest.

**DESCRIRIPTION OF CHANGE IN TERMS.** Borrower shall pay to Lender Interest on the unpaid principal balance thereof, at the rate of 2.00 percentage points per annum in excess of Lender's Prime Rate. The maturity date shall be December 31, 2009.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations including all agreements evidenced or securing the obligation, remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligations as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction or the obligation. It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation including accommodation parties. Unless a party is expressly released by Lender in writing Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of the Agreement or otherwise will not be released by it. The waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

[Signature Page Follows]

[1664] 0009 | 00449530 DOC; V1]

# CHANGE IN TERMS AGREEMENT

PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT

BORROWER:

A. F. EVANS COMPANY, INC. A CALIFORNIA CORPORATION

By: _____
    ALAN F. GREENWALD, PRESIDENT/CEO OF A. F. EVANS
    COMPANY, INC., A CALIFORNIA CORPORATION


A. F. EVANS DEVELOPMENT, INC., A CALIFORNIA CORPORATION

By: _____
    ALAN F. GREENWALD, VICE PRESIDENT OF A. F. EVANS
    DEVELOPMENT, INC., A CALIFORNIA CORPORATION


EVANS PROPERTY MANAGEMENT, INC., A CALIFORNIA CORPORATION

By: _____
    ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
    PROPERTY MANAGEMENT, INC., A CALIFORNIA
    CORPORATION

EVANS SENIOR COMMUNITIES, INC., A CALIFORNIA CORPORATION

By: _____
    ALAN F. GREENWALD, VICE PRESIDENT OF EVANS
    SENIOR COMMUNITIES, INC., A CALIFORNIA
    CORPORATION

{1664\0009\00449530.DOC; V1}