Entered on Docket
July 14, 2009
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed: July 14, 2009

_____
EDWARD D. JELLEN
U.S. Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                       No. 09-41727 EDJ
                                            Chapter 11
A.F. EVANS COMPANY, INC.,

                            Debtor./

MEMORANDUM DECISION - MOTION REQUIRING
DEBTOR TO REMIT SALES PROCEEDS

    A.    <u>Introduction</u>

    City National Bank ("CNB") has moved for an order requiring A.F. Evans Company, Inc., the above debtor (the "debtor"), to remit to it 87.5% of the proceeds the debtor realized from the court approved sale of its partnership interest in AFE-Pioneer Associates, LP ("AFE-Pioneer"). Pursuant to a court approved cash collateral stipulation between CNB and the debtor, CNB is entitled to the remittance if, at the date of the debtor's chapter 11 petition herein, it held a valid, perfected, security interest in the debtor's partnership interest in AFE-Pioneer.

    CNB's motion is opposed by the Official Committee of Unsecured

Memorandum Decision

Creditors (the "Committee"), which contends that any security interest CNB may have had in the debtor's partnership interest in AFE-Pioneer is avoidable or had been terminated by the date of the debtor's chapter 11 petition. Alternatively, the Committee contends that genuine issues of material fact are present, and that the court should set an evidentiary hearing to resolve such issues.

The court holds that at the date of the debtor's chapter 11 petition herein, CNB held a valid, perfected, security interest in the debtor's partnership interest in AFE-Pioneer. The court has therefore granted CNB's motion by order filed July 9, 2009.

B. <u>Facts</u>

Except as hereafter noted, the facts are undisputed. Prior to the filing of debtor's chapter 11 petition herein, CNB financed debtor's operations through a revolving line of credit. The line was secured by a security interest in substantially all the debtor's personal property, including the debtor's partnership interest in AFE-Pioneer.

On August 9, 2004, CNB perfected its security interest in the debtor's personal property by filing a UCC-1 financing statement with the California Secretary of State. In December 2008, the debtor wished to sell two partnership interests, not at issue herein, in partnerships called Westgate Housing Associates, L.P. ("Westgate") and Greenery Housing Associates, L.P. ("Greenery"). To facilitate the sale, the debtor requested CNB to release its perfected security interest in the two partnership interests in consideration of a payment of $37,500 at the closing of each of the

Memorandum Decision 2

two sale escrows. The request did not extend to the debtor's interest in AFE-Pioneer.

To facilitate the closing, the debtor sent CNB proposed escrow instructions, for Westgate and Greenery, respectively, directed to the debtor and First American Title Insurance Co. ("First American"), and two proposed UCC-3 Amendment statements. The proposed instructions included an exhibit containing a description of the collateral to be released upon payment to CNB of the agreed upon sums. These descriptions were limited to Westgate and Greenery and did not include any reference to AFE-Pioneer.

The proposed UCC-3 Amendment statements that the debtor sent to CNB provided for deletion of Westgate and Greenery from the collateral covered by CNB's UCC-1 financing statement. The official UCC-3 form includes a blank box, box no. 2, which a filer can check if a filer wishes to terminate the entirety of a prior security interest. Significantly, the termination boxes in the proposed forms the debtor submitted to CNB were not checked.

On January 8, 2009, CNB caused the two signed letters of escrow instruction, accompanied by two UCC-3 Amendment statements, to be submitted to First American. The letters and the two UCC-3 Amendment statements were in the exact form proposed by the debtor, without any check mark in box no. 2.

The escrows for the sale of debtor's interests in Westgate and Greenery closed, and two UCC-3 Amendment statements were recorded on January 28, 2009 in connection with the closings. These UCC-3 statements both referenced CNB's original UCC-1 financing statement,

Memorandum Decision 3

and included an "X" in box no. 2. Box no. 2 reads as follows:

> Termination: Effectiveness of the financing statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

In addition, both UCC-3 Amendment statements included a checkmark under box no. 8, headed "Collateral Change." In box no. 8, if selected, a filer can check one of four smaller boxes indicating whether the collateral described in box 8 is being deleted, added, restated, or assigned. On each of the two UCC-3 Amendment statements at issue herein, the "describe collateral deleted" option had been checked, followed by a description of the debtor's interest in, respectively, Westgate and Greenery. The verbiage of the descriptions was identical to that set forth in CNB's letters of instructions dated January 8, 2009.

CNB contends that someone, without authority, checked the termination boxes in the UCC-3 Amendment statements after CNB had transmitted them with its escrow instructions to First American, and that its security interest was not terminated except to the extent of Westgate and Greenery. The Committee does not so concede.

In any event, after CNB discovered what had been recorded, it filed two more UCC-3 Amendment statements on February 6, 2009, which stated that CNB had not authorized the termination of its security interests in any assets of the debtor other than Westgate and Greenery.

On May 5, 2009, the debtor filed its voluntary chapter 11 petition herein. Thereafter, this court approved a stipulation

Memorandum Decision   4

between the debtor and CNB, which in essence, required the debtor to remit to CNB 87.5% of the proceeds of various assets, when sold, subject to the right of the Committee to object based on any alleged defects in CNB's security interest. On March 12, 2009, the debtor filed a motion seeking court authority to sell its interest in AFE-Pioneer. The court granted the motion, subject to the debtor's obligation to remit 87.5% of the proceeds to CNB, and subject to the Committee's right to object to the remittance.

The sale of AFE-Pioneer has closed. CNB has filed a motion for an order compelling the debtor to remit to it 87.5% of the sales proceeds. The Committee has filed an objection, contending that the above-described UCC-3 Amendment statements recorded January 28, 2009 operated to terminate CNB's security interests in the debtor's property, including its partnership interests in AFE-Pioneer. CNB disagrees.

C. <u>Discussion</u>

California Commercial Code § 9513(d) (West 2002)[1] provides:

> Except as otherwise provided in Section 9510, upon the filing of a termination statement with the filing office, the financing statement to which the termination statement relates ceases to be effective.

Section 9510(a) provides:

> A filed record is effective only to the extent that it was filed by a person that may file it under Section 9509.

---

[1] California enacted numerous amendments to Division 9 of the California Commercial Code (Secured Transactions), effective July 1, 2001. Unless otherwise noted, all further section references herein are to the California Commercial Code as so amended.

Memorandum Decision 5

Section 9509(d) provides:

> A person may file an amendment other than an amendment that adds collateral covered by a financing statement or an amendment that adds a debtor to a financing statement only if either of the following conditions is satisfied: (1) The secured party of record authorizes the filing . . .

The Committee argues in reliance on § 9513(d) that the filing of the UCC-3 Amendment statements with the termination boxes checked terminated CNB's security interest.

The Committee further argues with reference to §§ 9510(a) and 9509(d) that, as a matter of general agency law, a principal, here CNB, is bound by the acts of its agents acting within the scope of the agent's authority. <u>Goddard v. Metropolitan Trust Co. of California</u>, 82 F.2d 902 (9th Cir. 1936). The Committee further argues that First American was CNB's agent for purposes of the AFE-Pioneer partnership sale, and accordingly, that even if First American checked the termination boxes in error, CNB is bound by that mistake and is therefore deemed to have authorized First American to terminate its security interest in all the debtor's personal property.

The court takes no issue with the general proposition that a principal is bound by the acts of an agent acting within the scope of the agent's authority. Nor does the court disagree that, for purposes of determining what a secured party did or did not authorize within the meaning of § 9509(d), law other than the Commercial Code may determine the issue. <u>See</u> Uniform Commercial Code, official comment to § 9-509.

/////

Memorandum Decision 6

However, the court does take issue with the applicability of the foregoing principles to the undisputed facts present here.

First of all, according to the uncontroverted declaration of Jerry McDermott, a Vice President of CNB, First American was not acting within the scope of its authority when and if it attempted to terminate CNB's security interest in any assets other than Westgate and Greenery. According to Mr. McDermott's Declaration dated June 11, 2009, the escrow instructions and UCC-3 Amendment statements that the debtor requested CNB to submit, and which CNB did submit, to First American in order to release its security interest in Westgate and Greenery, had only the "delete collateral" boxes checked, followed by a description of Westgate or Greenery, and did not have the termination boxes checked. Declaration of Jerry McDermott filed June 12, 2009, Paragraphs 8 and 9. Clearly, CNB did not, in fact, authorize First American to terminate its security interest as to assets other than Westgate and Greenery.

Moreover, according to Mr. McDermott:

> CNB had no input and no influence regarding establishing an escrow for the Westgate-Greenery transactions at First American Title Insurance Company. The escrow was established by the Debtor or by the purchaser of the Westgate-Greenery partnership interests prior to preparation by the Debtor of the escrow instructions and enclosures that I was provided by [the debtor]. . . .

Declaration of Jerry McDermott filed June 12, 2009, Paragraph 7.

> CNB was not involved in any way with the selection of the escrow agent, has not engaged or employed the escrow agent, and has not had any contact whatsoever with the escrow agent (either in writing or verbally) with regard to the filing of the subject financing statement

/////

Memorandum Decision          7

      amendments or the Westgate-Greenery sale, excpdt for my
delivery of the escrow instructions and their enclosures
as described in Paragraphs 6 and 7 above.

Declaration of Jerry McDermott filed June 12, 2009, Paragraph 12.

      Therefore, First American was not CNB's agent, except for the limited purpose of handling the closing of the escrow for the debtor's sale to the buyer of the Westgate and Greenery partnership interests. And First American was not acting within the scope of its very limited authority from CNB when it recorded a UCC-3 Amendment statement in a form other than that which CNB had authorized.

      It follows that CNB was not bound by First American's unauthorized modification to the UCC-3, if indeed the modification was by First American. Sections 9509(d) and 9510(a). See also, Montgomery v. Bank of America Nat. Trust and Savings Ass'n., 85 Cal.App.2d 559 (1948) (a party to an escrow was not bound by the escrow holder's unauthorized alteration of a deed, which deed was rendered void by the alteration).[2]

      The Committee cites In re Pacific Trencher & Equipment, Inc., 735 F.2d 362 (9th Cir. 1984) as authority to the contrary. In Pacific Trencher, the secured party had filed a UCC form with the apparent intention of releasing its security interest in certain, but not all, of the debtor's assets. Unfortunately for the secured

---

[2]Given this conclusion, the court need not address the effect, if any, of the UCC-3 Amendment statements CNB filed on February 6, 2009.

Memorandum Decision         8

party, it mistakenly checked the "termination" box rather than the "release" box. The termination box read "The Secured Party certifies that the Secured Party no longer claims a security interest under the Financing Statement bearing the file number shown above."

The lower courts held that the filing of the termination statement terminated the secured party's security interest. On appeal to the Ninth Circuit, the secured party argued that it should be entitled to reform the termination statement, or alternatively, that the termination statement should be construed as a partial termination of its security interest, based on the collateral description that the secured party had included in the form. The Ninth Circuit rejected these arguments, noting "Given the language of this form, there is no possibility of construing a partial termination of items listed in a financing statement." Id. at 364.

Pacific Trencher is distinguishable for several reasons. First, the error in Pacific Trencher was the secured party's error, and did not involve an unauthorized act by an escrow agent. This is particularly significant because the Ninth Circuit decided Pacific Trencher prior to the enactment of §§ 9509 and 9510, which specifically address the affect of an unauthorized UCC filing. One treatise noted as follows with respect to the purpose of these provisions:

> Revised Section 9-510(a) also addresses a related, but distinct, problem. What is the status of a record that was filed by a person entitled to file by revised Section 9-509 but the content of which goes beyond that which was authorized? . . . Revised Section 9-510(a) provides that a

Memorandum Decision 9

> filed record is effective only to the extent that it was filed by a person entitled to do so under revised Section 9-509. As the comment makes clear, the "only to the extent" language is present to nullify records to the extent that they go beyond the actual or deemed authorization that entitled the filer to file them.

9B Hawkland's Uniform Commercial Code Series (West 2001), at pp. Rev. Art. 9-794 - Rev. Art. 9-795, §9-509:4.

In addition, the UCC form at issue in Pacific Trencher had only one box, the termination box, checked. The Ninth Circuit opined on that basis that the form could not reasonably be construed to effect a partial termination of the secured party's security interest. Here, however, each of the UCC-3 forms at issue had two boxes checked - the termination box plus the release of collateral box. Clearly, checking a release of collateral box would be superfluous in a case where a secured party wished to terminate a security interest in its entirety. Thus, the ambiguity here is patent, whereas the form at issue in Pacific Trencher was unambiguous.

The presence of this ambiguity is material because of § 9506(a), which provides:

> A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

Under this provision, the test of whether an error is not seriously misleading is "whether it would indicate to an interested third party the possible existence of prior encumbrances on the collateral." In re Munger, 495 F.2d 511, 512 (9th Cir. 1974). Here, CNB's financing statements, as amended by the UCC-3 Amendment

Memorandum Decision                    10

statements, each with two conflicting boxes checked, would raise a red flag for any person conducting a search alerting such person of the possibility that a full termination may not have been intended.[3]

D. Conclusion

For the foregoing reasons, the court has issued its order granting CNB's motion.

**END OF ORDER**

---

[3] In addition, given the fact that a single UCC-1 filing can be terminated only once, the redundancy of two UCC-3 Amendment statements being filed with box 2 checked, each describing different collateral in box 8, would have raised an additional red flag to any person searching the records.

Memorandum Decision           11

```
 1                              COURT SERVICE LIST
 2   Chris D. Kuhner, Esq.
     Kornfield, Nyberg, Bendes & Kuhner, P.C.
 3   1999 Harrison Street, Suite 2675
     Oakland, CA 94612
 4
     Maxim B. Litvak, Esq.
 5   Pachulski, Stang, Ziehl & Jones
     150 California Street, 15th Floor
 6   San Francisco, CA 94111-4500

 7   Frank T. Pepler, Esq.
     Pepler Mastromonaco LLP
 8   100 First Street, 25th Floor
     San Francisco, CA 94105
 9
     Office of the U.S. Trustee
10   1301 Clay Street, Suite 690-N
     Oakland, CA 94612
```

Memorandum Decision                     12