Leonard Flanagan, WA Bar No. 20966
LEVIN & STEIN
201 Queen Anne Avenue North, Suite 400
Seattle, WA 98109
PHONE 206.388.0660
FAX 206.286.2660
EMAIL: Leonard@condodefects.com

Attorneys for Creditor The Esplanade
Condominium Association

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| In re: | Case No.: 09-41727-EDJ |
|---|---|
| A.F. Evans Company, Inc., | Chapter 11 |
| Debtor. | |
| | **MOTION FOR RELIEF FROM STAY** |
| | Date: **March 5, 2010**<br>Time: **10:00 AM**<br>Judge: **Edward D. Jellen**<br>Place: **Courtroom 215**<br>**1300 Clay Street**<br>**Oakland, California** |

TO: THE HONORABLE EDWARD D. JELLEN,
UNITED STATES BANKRUPTCY JUDGE

### I. RELIEF REQUESTED

Creditor The Esplanade Condominium Association ("the Association") respectfully requests relief from the automatic stay under 11 U.S.C. §362(d)(1). Relief from the stay is appropriate here to permit the Association to complete its pre-petition action for construction

defects and related claims which has been litigated in Washington state court against debtor A.F. Evans Co., Inc., and six other co-defendants.

## II.     FACTS

The Association is a Washington non-profit corporation, and the homeowners association of a 168 unit condominium project in Kirkland, Washington known as "The Esplanade" ("the Project.")  Debtor's wholly-owned subsidiary, "A.F.E. Spinnaker, LLC," a Washington limited liability company, purchased two apartment complexes in July, 2005 for $22.85 million; after minimal improvements, the subsidiary and its affiliates converted the apartments to condominium ownership, and over a period of 13 months sold the units to homeowners for an aggregate price of $41.55 million.[1]

In the course of converting the Project to condominiums, A.F.E. Spinnaker, LLC commissioned a building condition investigation and report which disclosed serious defects in the construction of the Project, water intrusion, and resulting serious structural impairment of the buildings.  Also as part of the conversion, Debtor's affiliate A.F. Evans Development Company, Inc. commissioned a reserve study and plan for eventual financing of maintenance and repairs of the Project by the Association.  Both of these documents were included with a "Public Offering Statement" provided to prospective unit purchasers.[2]

The Association has since determined that the cost to repair the extensive and ongoing damage at The Esplanade will cost on the order of $6.9 million.[3]  Yet despite the serious and extensive defects and damage at the Project, Debtor and its codefendants represented to unit

---

[1]     Flanagan Declaration in Support of Motion for Relief From Stay ("Flanagan Decl."), ¶2 and Exhibit 1 (Flanagan Declaration filed in the Washington state court action.)
        It further appears that no assets were left in Debtor's subsidiary, A.F.E. Spinnaker, LLC, to address the latter's statutory warranty obligations because the company was allowed to expire, and because Debtor as its sole member has allowed a default to be entered against it.
[2]     Flanagan Decl., ¶3.
[3]     Exhibits 3&4 to Flanagan Decl., and ¶¶4-5.

MOTION FOR RELIEF FROM STAY
CASE NO. 09-41727 EDJ

2

purchasers that reserve contributions of $915 per unit per year (about $75 per month, for a total of slightly over $153,000) would be adequate to address the serious maintenance needs of the Project.[4] In fact, emergency roof repairs alone in the first 2 years of the condominium's operation exceeded $100,000.[5]

As far as the Association is able to determine, the individual defendants who served on the Association's Board of Directors on behalf of A.F.E. Spinnaker, LLC and the Debtor took no steps to correct the construction defects and damage at the Project, even though they could have assessed the cost to correct the problems against the many units held by A.F.E. Spinnaker, LLC. The Board appointed by Debtor's subsidiary could also have commenced an action in time to recover the proceeds of sales that were apparently disbursed to Debtor (or other parties currently unknown.)

When it became apparent that the Association was facing vast unanticipated repair expenditures, on September 30, 2008, the Association sent Debtor and A.F.E. Spinnaker, LLC a "Notice of Construction Defect Claim" as required by Washington law. RCW 64.50.020.[6]

Neither Debtor nor its subsidiaries responded to the Notice of Claim, so on December 5, 2008 the Association filed its Complaint for construction defects in Washington state court against the Debtor, the named "declarant" of the project (A.F.E. Spinnaker, LLC), Debtor's wholly-owned affiliate A.F. Evans Development Co., Inc., and three employees of Debtor who had been appointed to serve as members of the Association's board of directors. The Complaint alleged causes of action including, among other things, claims for (1) damages from breach of the implied warranties of construction quality under the Washington Condominium Act, (2) misrepresentations and material omissions from the public offering statement, (3) fraudulent concealment of defective

---

[4] Flanagan Decl., ¶3 and Ex. 2.
[5] Flanagan Decl., ¶6.
[6] Flanagan Decl., ¶7

conditions, (4) damages for failure to deliver valid public offering statement, (5) damages for unfair and deceptive trade practices under Washington's Consumer Protection Act, (6) breach of fiduciary duty under Washington's Condominium Act by the three Association board members who were appointed as agents of Debtor and A.F.E. Spinnaker, LLC, and (7) relief from fraudulent transfers under Washington's version of the Uniform Fraudulent Transfers Act.[7]

On January 5, 2009, counsel appeared for Debtor in the state court action. However, Debtor did not answer the Complaint, and its counsel eventually withdrew effective May 7, 2009. Thereafter, on June 23, 2009, the Association entered an Order of Default against A.F.E. Spinnaker, LLC.[8]

In the meantime, Debtor commenced this Chapter 11 proceeding on March 5, 2009. It does not appear that the Association's defect claim was scheduled. Debtor's Petition shows that for some unfathomable reason Debtor listed the Association's address as 11322 4th Pl. SW in Seattle, a location which is fact a parking lot in a low income housing project operated by King County, having absolutely nothing to do with the Association.[9]

On September 18, 2009, non-party insurer (RSUI Indemnity Company) agreed to defend Debtor and a number of its co-defendants in the state court construction defect action. That same day, RSUI appointed defense counsel, who immediately entered a notice of appearance in the construction defect action.[10]

The Association filed a Motion for Partial Summary Judgment in the state court action, seeking a ruling that under Washington's Condominium Act, the defendants' attempted disclaimers of statutory warranties of quality were void and ineffective. Debtor (and its co-

---

[7] Flanagan Decl., ¶8 and Ex. 5.
[8] Flanagan Decl. ¶¶9 & 10.
[9] Flanagan Decl. ¶¶11 & 12.
[10] Flanagan Decl., Ex. 6 and ¶13.

defendants) vigorously opposed the Association's Motion, but on November 6, 2009 the Association's Motion was granted. Debtor and its co-defendants moved the trial court for reconsideration on November 16, 2009, which was denied. Thereafter, Debtor's codefendants filed a request for interlocutory appellate review of the summary judgment decision by Washington's Court of Appeals for Division 1. That request was later withdrawn, but only after the deadline for filing a brief in support of the request for review had past.[11]

On November 4, 2009, Debtor and its codefendants filed their own Motion for Summary Judgment in the state court action, seeking dismissal of claims against them.[12]

Negotiations regarding the propriety of this action, given that the defendants had not responded to discovery requests, ensued. On or about November 23, 2009 Debtor and its codefendants negotiated a short stipulated trial continuance with counsel for the Association, in order to allow insurance defense counsel adequate time to produce discovery responses and prepare for trial.[13]

The day following the Association's acquiescence to a short trial continuance, defense counsel for the Debtor advised the Association that A.F. Evans Co., Inc. had filed for Chapter 11 bankruptcy relief; on November 30, 2009, defense counsel sent the Association's counsel a "Notice of Bankruptcy" form.[14]

On or about December 22, 2009, A.F. Evans Development Co., Inc. presented the Association with long-overdue production of documents. However, no discovery responses have

---

[11] Flanagan Decl., ¶¶ 14 & 15.
[12] Flanagan Decl. ¶ 16.
[13] Flanagan Decl., ¶17.
[14] Flanagan Decl., ¶ 18.

MOTION FOR RELIEF FROM STAY
CASE NO. 09-41727 EDJ

been forthcoming on behalf of the Debtor, A.F. Evans Co., Inc., or its wholly-owned subsidiary A.F.E. Spinnaker, LLC (that acted as the nominal declarant and seller of the condominium units.)[15]

Trial in the Washington state court action, originally scheduled for May 2009, is now scheduled for August 16, 2010.[16]

### III.	AUTHORITY AND ARGUMENT

Under 11 U.S.C. §362(d)(1), relief from the automatic stay may be had for "cause." The Bankruptcy Code does not define what constitutes "cause," but the legislative history shows that the presence of a more convenient forum in which an action is already pending is one such cause:

> It will often be more appropriate to permit the proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S.Rep. No. 989, 95th Cong., 2d Sesss. 50, reprinted in 1978 U.S.C.C.A.N. 5787, 5836, quoted in *In Re Johnson*, 153 B.R. 49 (BC D Idaho 1993). Whether cause exists in a give case is within the discretion of the bankruptcy court. *In Re Silvering*, 179 B.R. 909 (BC ED Cal., 1995), aff'd 96-1 USTC P 50134, 77 AFTR 2d 1067 (ED Cal. 1996).

A considerable number of factors have been identified as bearing on the court's decision whether to lift the automatic stay, centering on issues of prejudice or harm to debtor, to the creditor, to the administration of the estate, and to judicial economy. Notable among the factors identified in the caselaw are:

1. Whether a prepetition state court action has been pending for some time, and significant steps have been taken toward trial readiness.[17]

---

[15] Flanagan Decl., ¶ 19.
[16] Flanagan Decl., ¶ 20
[17] *In re Yaffe*, 58 B, 26 (BC DC Dist.Col., 1986); *In re Emerald Cove Villas, LLC*, 20 FLW Fed. B. 311 (BC MD Fla, 2007); *In re Blan*, 237 BR 737 (BAP8 Ark., 1999); *In re Johnson*, 153 BR 49 (BC D. Idaho, 1993).

MOTION FOR RELIEF FROM STAY
CASE NO. 09-41727 EDJ

6

2. Whether the state court action involves many parties in addition to the debtor, and whether trial will be required as to all of these other parties regardless of what happens to the debtor.[18]

3. Whether the debtor's litigation expenses in the state court action are minimized or absorbed by insurance or in some other fashion.[19]

4. Whether relief from the stay will result in partial or complete resolution of the issues, for example if the debtor is found not liable in the state court action no further proceedings in the bankruptcy court will be necessary, thereby saving the bankruptcy court the extra burden of litigation.[20]

5. Whether the issues in the state court action involve peculiarly state law, and/or unsettled questions of state law.[21]

6. Whether forcing a multiplicity of suits will involve unnecessary time and expense on the part of the creditor, and the debtor is better able to assume that expense.[22]

7. Whether the creditor in the prepetition action will be prejudiced by geographical distance and expense involved in conducting litigation the bankruptcy court.[23]

8. Whether the bankruptcy court lacks jurisdiction over the debtor's codefendants.[24]

9. Whether the estate can be protected by requiring that creditors seek enforcement of any resulting judgment in the bankruptcy court.[25]

In the present case, these factors militate in favor of lifting the stay so that the Association can complete the action against the debtor, which is just one of a number of defendants.

**1. Relief from the stay is appropriate because the Association's pre-petition state court action has been pending for more than a year, and significant steps have been taken toward trial readiness.**

This action was commenced by notice as of September 30, 2008. It was not until early March of 2009 that Debtor filed for bankruptcy relief. And, though counsel for the Debtor

---

[18] *In re Yaffe*, supra; *In re CLC of America, Inc.*, 68 BR 512 (BC ED Mo., 1986); *In re Blan*, supra
[19] *In re Yaffe*, supra;
[20] *In re Yaffe*, supra.
[21] *In re Robbins*, 964 F.3d 342 (CA4, 1992); *In re Lahman Mfg. Co.*, 31 BR 195 (BC DC SD, 1983); *In re Emerald Cove Villas*, supra; *In re Blan*, supra; *In re Hohol*, 141 BR 293 [*15] (DC MD Penn., 1992)
[22] *In re Westwood Broadcasting, Inc.*, 35 BR 47 (BC DC Hawaii, 1983); *In re Blan*, supra
[23] *In re Pulley*, 196 BR 502 (BC WD Ark, 1996); *In re Blan*, supra; *In re Johnson*, supra.
[24] *In re Blan*, supra.
[25] *In re Robbins*, supra.

MOTION FOR RELIEF FROM STAY
CASE NO. 09-41727 EDJ

7

appeared at the beginning of January, 2009, it was not until some eleven months later that Debtor's counsel notified the Association of the bankruptcy proceedings. In the meantime, substantial discovery has been performed, and the Debtor allowed default to be entered against A.F.E. Spinnaker, LLC (its wholly-owned subsidiary, and the primary warrantor of the qualify of the project under Washington law.) In addition, important legal decisions regarding the warranty responsibility of the defendants, and the fact that their purported warranty disclaimers are void, have been determined by the trial court, without objection by the Debtor.

In short, substantial progress over the course of more than years has been made toward resolution of this matter in Washington state court, without objection by Debtor, its principals, or its subsidiaries.

**2.  Relief from the stay is appropriate because the state court action involves many parties in addition to the Debtor, and trial will be required as to all of these other parties.**

This action involves five parties defendant in addition to the Debtor. Claims are being prosecuted against the project declarant, A.F.E. Spinnaker, LLC, which is Debtor's wholly owned subsidiary, as well as against A.F. Evans Development, Inc. the development arm of the A.F. Evans group of companies, for breach of warranty, misrepresentations in the Project public offering statement, breach of fiduciary duty, and constructively fraudulent transfers of assets. Claims for breach of fiduciary duty in governance of the Association's affairs are alleged against individuals appointed by A.F.E. Spinnaker, LLC to serve on the Association's Board of Directors. All of these claims will have to be litigated to resolution, and it makes no logical sense to burden the bankruptcy court with resolution of these claims against additional parties. At the same time, it would be functionally impossible, or at a minimum involve great duplication of effort, to litigate or

resolve these claims against Debtor without at the same time resolving them against the other defendants.

**3.     Relief from the stay does not incrementally increase the burden on the estate because Debtor's litigation expenses in the state court action are being paid by insurance.**

Debtor's defense in the state court action, along with that of the other defendants, is all being paid for by insurance. Accordingly, the cost of completing the state court litigation should have no impact on the estate.

**4.     Relief from the stay will result in partial or complete resolution of the issues, thereby saving the bankruptcy court the extra burden of litigation.**

If Debtor succeeds in establishing that it is not liable for the claims asserted against it in the state court action, it is believed that the Association will have no further significant claim against Debtor in the bankruptcy proceeding.[26] If Debtor does not succeed, its liability will be established, as well as the issue of fraudulent asset transfers, thereby saving the bankruptcy court the burden of additional litigation.

**5.     The issues in the state court action involve peculiarly state law, including unsettled questions of state statutory construction, which are more appropriately addressed in the Washington state court.**

This action involves unique issues of Washington statutory law that the bankruptcy court is not as well-equipped to address. Some of that law is unsettled.[27] For example, key issues include the scope of implied statutory warranties under Washington's Condominium Act as applied to conversion condominiums, RCW 64.34.445, as well as recent (2004) changes to the disclaimer provisions of that Act which have not been construed in case law. RCW 64.34.450.

As noted above, the Association prevailed at summary judgment on a motion to have various warranty disclaimers declared ineffective, and A.F. Evans Development, Inc. and the other

---

[26]    Debtor has scheduled a debt of $14,608.58 as owing to the Association, though it is not clear what that debt represents.
[27]    See generally, Flanagan Decl., ¶22.

defendants filed a request for interlocutory review of that determination; the request was presumably based on the unsettled nature of law on the issue.

Similarly, the misrepresentation and fiduciary duty claims in the state court action are predicated on Washington statutory law as set out in the Condominium Act, RCW 64.34.308(1), while claims for unfair trade practices are based on Washington's unique Consumer Protection Act. RCW 19.86.090.

**6. Forcing a multiplicity of suits will involve unnecessary time and expense on the part of the Association, and the Debtor is better able to assume that expense by virtue of insurance coverage.**

Forcing the Association to litigate separate lawsuits will involve unnecessary expense, when the Debtor (by virtue of insurance coverage for its defense) is in a financially better position to shoulder the burden of moving forward with a single lawsuit in Washington state. The Association, for its part, is currently faced with emergent repair bills by reason of the defendants' sale of a decrepit facility riddled with concealed defects, without first performing adequate repairs or funding the Association's repair reserves from the enormous profits reaped by defendants on sale of the units. For example, it is undisputed that widespread and serious water intrusion is occurring that requires a full strip and re-clad of the buildings, and extensive replacement of structural sheathing.[28] Unplanned costs in excess of $100,000 have been incurred to correct failing roofs.[29] At the same time, at least half if not more of Debtor's active real estate (apartment) holdings are in Washington State, such that in many respects Debtor's principal place of actual business is as much Washington as it is California.

**7. Relief from the stay should be granted because the Association will be prejudiced by geographical distance and expense involved in conducting litigation the California bankruptcy court.**

---

[28] Flanagan Decl., Ex. 3 (Schroeder Declaration from state court action).
[29] Flanagan Decl., ¶ 6.

MOTION FOR RELIEF FROM STAY
CASE NO. 09-41727 EDJ
10

The Project itself, virtually all of the one hundred and sixty eight unit purchasers whose interests the Association represents, the property management company for the project, the marketing companies that worked with Debtor and its affiliates, the experts hired by defendants to report on the condition of the property to prospective purchasers, and even one of the individual board members appointed by defendants to serve on the Association's Board of Directors are **all** located in the greater Seattle area.[30]

It would work a substantial prejudice on the Association to have to transport witnesses, which could in some circumstances number over a hundred purchasers, to California to testify.

In contrast, at most just a few of Debtor's employees would be required to attend proceedings in Washington, and that would hardly be prejudicial given that at least half of Debtor's active subsidiary business entities (primarily apartments) are Washington state entities with ongoing operations in Washington. (See Periodic Report Regarding Value, Operations and Profitability, Docket 92).[31]

**8.  The bankruptcy court may lack jurisdiction over at least two of Debtor's codefendants.**

Debtor's codefendants include a Washington single-asset entity that acted as the declarant for the Esplanade condominium project. That entity has not conducted any known business in California, and its only apparent connection to the California forum is that it was owned by the Debtor. Similarly, defendant Tory Laughlin-Taylor is a resident of Seattle, Washington.

**9.  The estate can be protected by requiring enforcement of any judgment through the Chapter 11 proceedings.**

---

[30] Flanagan Decl., ¶ 21.
[31] Specifically, in addition to "The Esplanade" project, all of the following subsidiary business entities are Washington entities operating in Washington: (1) Bishop Park – Port Townsend, LLC, (2) Glacier Village – Eatonville, LLC, (3) Grandview Square-Grandview, LLC, (4) Lake Washington Apt LLC, (5) NAHA – Hilltop Ridge, LLC, (6) NAHA – Yakima Gardens, LLC, (7) Sunnyside Manor – Sunnyside LLC, and (8) Snoqualmie Valley Apartments, LLC.

The Association's request is only that it be allowed to proceed to judgment with its action. Any judgment that might be entered against Debtor should be enforceable against the Debtors assets only in the Chapter 11 proceedings. Accordingly, the Debtor's estate will be adequately protected.

## IV. CONCLUSION

The Association has been litigating its case against Debtor in Washington state court for more than a year, without objection from Debtor. The state court litigation involves unique and complex questions of Washington statutory law, and a number of parties in addition to Debtor. The parties, including the Debtor, have taken substantial steps in that litigation, including the resolution of dispositive motions, discovery, and trial planning. Debtor is being defended by insurance defense counsel at no expense to it. For the Association, in contrast, litigating this case in the Bankruptcy Court in California will be a substantial burden and expense. Moreover, given that the vast majority of witnesses reside in Washington (here Debtor operated at least half of its businesses), it makes good sense to lift the stay and allow the Washington state court proceeding to run its course.

RESPECTFULLY SUBMITTED this 11th day of February, 2010.

LEVIN & STEIN

By: /s/ Leonard Flanagan
Leonard Flanagan, WA Bar No. 20966
Attorneys for Creditor The Esplanade
Condominium Association